Jack C. CHILINGIRIAN,
Plaintiff–Appellant,

v.

Joseph F. BORIS, Jr., Janice A.B. Wilson,
Leo R. Sadowski, Edmund T. Adam-
czyk, and City of Fraser, a Municipal
Corporation, Jointly and Severally, De-
fendants–Appellees.

No. 88–1443.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1989.

Decided May 5, 1989.

Kenneth H. Karam (argued), St. Clair Shores, Mich., for plaintiff-appellant.

Michael J. Barton, Christine D. Oldani (argued), Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., Paul J. O'Reilly, O'Reilly, Rancilio, Nitz, Andrews & Turnbull, Sterling Heights, Mich., for defendants-appellees.

Before JONES, WELLFORD, and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Jack C. Chilingirian, appeals the district court's grant of summary judgment for defendants Mayor Joseph F. Boris, Jr.; city council members Janice A.B. Wilson, Leo R. Sadowski, and Edmund T. Adamczyk; and the City of Fraser (the city) in his civil rights action filed pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Chilingirian's suit challenges his termination as a city attorney for Fraser, Michigan. He first claims that the district court erred in concluding that he lacked a property interest in continued employment as city attorney. Additionally, he claims that statements made by a city council member during the meeting at which he was terminated in absentia so stigmatized his name and reputation as to deprive him of a liberty interest. Finally, Chilingirian challenges the procedural sufficiency of a name-clearing hearing granted him by the city. Finding Chilingirian's claims to be without merit, we affirm the district court's ruling.

The undisputed facts of this case reveal that on December 8, 1983, the city council for Fraser, Michigan, appointed the law firm of Berschback, Kerwin, Locicero, Brennan & Chilingirian as the city's legal counsel. Apparently, Chilingirian acted as the city attorney while two of his colleagues acted as the city's labor attorney and district attorney. At a subsequent city council meeting, held on July 23, 1987, a resolution was passed dismissing Chilingirian from all city business effective August 1, 1987.[1] Chilingirian was not present at that meeting. He contends that his termination was prompted by his investigation into alleged improprieties and irregularities involved in a 1983 loan agreement between the city and the Michigan Department of Transportation.[2] In her motion to oust Chilingirian, defendant Councilwoman Wilson indicated, among other things, that Chilingirian elicited press publicity too often, lacked respect for proper courtroom decorum, was not well respected by other attorneys or judges, lacked an understanding of his role as city counsel, and was earning substantial sums at first class rates for less than first class legal services. Other council members present at the meeting ardently refuted each of Wilson's contentions and, in opposition to Chilingirian's ouster, cited his numerous attributes and accomplishments. Accounts of plaintiff's termination, including the previous remarks of council members, appeared in the newspaper, on the radio, and on television. A month after Chilingirian's termination, Mr. Berschback tendered a letter of resignation to the city on behalf of his firm.

1. The four city council members who voted to approve Chilingirian's dismissal are, along with the city itself, the named defendants in this case.

2. Chilingirian has filed a separate action against the city under the Michigan Whistleblowers' Protection Act. Mich.Comp.Laws Ann. §§ 15.-361–.369.

On July 30 and again on October 8, 1987, Chilingirian wrote to the Fraser City Council seeking a hearing on the charges against him. On November 17, 1987, through its new attorney, Paul O'Reilly, the city granted Chilingirian's request for a "name-clearing hearing." Chilingirian then submitted a set of eleven detailed questions that he insisted be asked of city council members in connection with his name-clearing hearing.[3] He also sought a public expression of regret for any impugnity to his reputation attributable to the city and public verification that his termination was unrelated to his professional competence or integrity. The city's response indicated that Chilingirian would be permitted to address the purportedly stigmatizing statements made at the July 23, 1987, council meeting and that, although council members could respond to those statements if they so chose, they would not be subjected to interrogation. Accordingly, at the December 10, 1987, hearing, O'Reilly advised city council members against engaging in debate or dialogue during the hearing. He indicated that council members could, if desired, respond to any specific questions raised during the hearing or those previously submitted by Chilingirian. O'Reilly recommended that no other action be taken by council at the conclusion of the hearing. Both Chilingirian and his counsel attended and spoke at the hearing. Chilingirian's counsel stated that the defendants' failure to respond to the eleven submitted questions indicated that Chilingirian was terminated without cause. He noted that Chilingirian had won for the city fifty-one of fifty-three court-considered cases and that he had even taken one city appeal at his own expense. Plaintiff's counsel also noted that less than half of a recent $14,000 legal bill submitted to the city was attributed to plaintiff's services. No one else spoke on behalf of plaintiff at the hearing, and the council did not respond to any questions.

On December 17, 1987, as a consequence of his termination, Chilingirian filed a seven-count complaint, pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988. He claimed that he was denied due process in connection with the defendants' deprivation of his protected liberty and property interests (counts one and two). He also alleged equal protection violations (count three), conspiracy to violate civil rights (count four), neglect or refusal to prevent a conspiracy to violate his civil rights (count five), interference with contractual relationships (count six), and refusal to conduct a name-clearing hearing consistent with due process requirements (count seven).

Shortly after filing his complaint, Chilingirian filed various discovery documents and requests. Following the defendants' answer to the complaint and while discovery requests were pending, Chilingirian filed a partial summary judgment motion, alleging that the December 10, 1987, name-clearing hearing was procedurally inadequate. The defendants filed a cross-motion for summary judgment on all counts. At a hearing on March 24, 1988, the district court denied Chilingirian's motion and granted the defendants' motion as to the due process liberty and property counts, as well as the equal protection and name-clearing counts. This ruling effectively disposed of the two conspiracy related counts. Finally, the district court declined to exercise pendent jurisdiction over the interference with contractual relations claim and dismissed it without prejudice. After the district court dismissed his complaint, Chilingirian filed this appeal.

I.

In assessing the propriety of the district court's grant of summary judgment for the defendants,[4] we first note that the purpose of summary judgment as a procedural device is to allow a court to decide whether any material issues of fact are actually in dispute. *Kelley v. Carr*, 567 F.Supp. 831,

---

3. The eleven questions are incorporated as Attachment No. 1 to this opinion.

4. We note that the district court suggested that both Chilingirian's partial summary judgment

motion and defendants' summary judgment motion were really 12(b)(6) motions because, at the time of the district court proceedings, no discovery had yet occurred.

835 (W.D.Mich.1983). It does not permit a court to resolve disputed factual issues. *Id.* Moreover:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a *sufficient showing* on an essential element of her case....

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added).

■■■ Chilingirian contends that summary judgment was inappropriate and premature because no discovery occurred prior to the judgment and because his allegations of conspiracy involved questions of motive and intent. We, like the district court, however, are persuaded that the facts here are largely undisputed. Hence, although no discovery had occurred by the time of the district court ruling, there is no evidence that discovery would have disclosed disputed material facts in support of Chilingirian's claim.[5] Moreover, it was Chilingirian, himself, who initiated the summary judgment proceedings. Accordingly, the district court did not err in ruling on the parties' motions for summary judgment before discovery was complete. Chilingirian's conspiracy claim is addressed below.

## II.

■■■ A federal cause of action is created by 42 U.S.C. § 1983 for the deprivation of constitutionally protected liberty and property interests. *Ramsey v. Board of Educ.,* 844 F.2d 1268, 1271 (6th Cir. 1988). Chilingirian first claims that the district court erred in concluding that he lacked a constitutionally protected property

interest in continued employment as the city attorney. In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court indicated that procedural due process requirements apply to deprivation of liberty and property interests encompassed by the fourteenth amendment and that, when those interests are implicated, "the right to some kind of hearing is paramount." *Id.* at 569–70, 92 S.Ct. at 2705 (footnote omitted). Here, the district court correctly recognized that property interests are created and defined by sources independent of the Constitution such as state law. *Id.* at 577, 92 S.Ct. at 2709; *see also Ramsey,* 844 F.2d at 1271. Moreover, a public employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause. *See generally Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College,* 518 F.2d 1091 (6th Cir.1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976). In determining whether Chilingirian enjoyed a constitutionally protected property right to continued employment and a concomittant right to a pretermination hearing, the district court examined the city charter. Section 4.6, in pertinent part, provides:

> The administrative officers of the city shall be the Clerk, Treasurer, Assessor, Attorney, Chief of Police, and Fire Chief, and such additional administrative officers as may be created by ordinance. The Council may combine any administrative offices in any manner it deems necessary or advisable for the proper and efficient operation of the city.

> Except as hereinbefore provided, all administrative officers of the city shall be appointed by the Council for an indefinite period, shall serve at the pleasure of

---

5. The district court recognized that a factual dispute exists as to whether Chilingirian or his law firm was the city attorney but deemed this dispute irrelevant given its determination that the city attorney is terminable at will. Moreover, Chilingirian's firm tendered a letter of resignation following Chilingirian's termination.

the Council, and shall have their compensation fixed by the Council.

. . . .

All personnel employed by the city who are not elected officers of the city or declared to be administrative officers by, or under the authority of, this section shall be deemed to be employees of the city. The head of each department shall have the power to hire and discharge the employees of such department without confirmation by the Council. Any employee who has been discharged may within ten days thereafter petition the Council to hear the facts regarding such discharge, and in any such case the Council may, in its sole discretion, hold a hearing and inquire into such facts and may make such recommendation in the matter as it considers proper. . . .

Notably, the charter provides that administrative officers, including the city attorney, serve at the pleasure of the council, while city employees are entitled to seek a due process hearing prior to discharge.

The district court recognized an apparent conflict between section 4.6's provision that the city attorney serves at the pleasure of the council and section 5.2, which provides in pertinent part that:

Any elective city office shall be declared vacant by the Council upon the occurrence of any of the following events before the expiration of the term of such office. . . .

The office of any member of any board or commission created by, or pursuant to, this charter shall be declared vacant by the Council. . . .

Removals of officers by the Council shall be made for either of the following reasons: (1) for any reason specified by statute for removal of city officers by the governor, (2) for misconduct in office under the provisions of this charter. Such removals by the Council shall be made only after hearing of which such officer has been given notice by the

Clerk at least ten days in advance, either personally or by delivering the same at his last known place of residence. Such notice shall include a copy of the charges against such officer. The hearing shall afford an opportunity to the officer, in person or by attorney, to be heard in his defense, to cross-examine witnesses and to present testimony. . . .

The court, however, properly reconciled these apparently conflicting provisions by giving effect to both. The court noted that section 16.9 of the charter indicates that:

Except as otherwise specifically provided or indicated by the context. . . .

The word 'officer' shall include the Mayor and other members of the Council, the administrative officers, members of the city boards and commissions created by or pursuant to this charter, and the Justice of the Peace.

Accordingly, the court noted that section 5.2 specifically refers to elective officers and board or commission members but is silent with respect to the city attorney or other administrative officers. Thus, the court concluded either section 5.2 does not refer to the city attorney or, if it does, it merely sets forth conditions for the city attorney's mandatory termination and leaves intact the council's authority to terminate him at its pleasure pursuant to section 4.6. *See Pratt v. Brown Mach. Co.,* 855 F.2d 1225 (6th Cir.1988) (employee was "at-will" notwithstanding handbook listing of causes for termination when handbook also conveyed policy of at-will employment). Based on this reasoning, with which we are in accord, the district court determined that because Chilingirian served at the pleasure of the council, his position as city attorney was terminable at will. Accordingly, Chilingirian enjoyed no property interest in continued employment and was entitled to no due process upon his termination.[6] *See Johnson v. Menominee,* 173 Mich.App. 690, 695, 434 N.W.2d 211

---

**6.** The district court correctly determined that Chilingirian's reliance on *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), was misplaced in that *Loudermill* dealt with due process rights of persons deprived of property interests in continued civil service employment that are recognized under Ohio law. In this case, no such rights are recognized.

(1988) ("public employment in and of itself is not a property interest automatically entitling an employee to procedural due process." (Citation omitted)). In his affidavit opposing the city's summary judgment motion, Chilingirian suggests that an implied contractual arrangement existed whereby "although each individual associate worked at the will of Council, they did so with an understanding that there would be no termination except for cause." He relies on this allegation to raise a factual dispute sufficient to overturn the summary judgment ruling against him. This argument is devitalized by the fact that the city charter governs the terms of the city attorney's employment and provides for termination at will. Moreover, the city was not authorized to enter into any contract in contravention of its charter. *See Niles v. Michigan Gas and Elec. Co.*, 273 Mich. 255, 262 N.W. 900 (1935) (under Michigan law, a municipality cannot exceed its charter powers). Accordingly, notwithstanding Chilingirian's protestations to the contrary, no viable means exists for circumventing the terminable-at-will language implicit in the charter's section 4.6 provision that the city attorney serves at the pleasure of the council. *See Petrauskas v. Gauze*, No. 86–0309 (E.D.Mich. April 27, 1987)[7] (Hazel Park city attorney position exists only as defined by terms of city charter such that the city's contractual grant of rights beyond those conferred by the charter could not give rise to a property interest beyond the interest conferred by the charter). Moreover, in view of Fraser's express charter provisions and the absence of contrary personnel policies, manuals, or other distinguishing features, *Toussaint v. Blue Cross and Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), does not require us to deviate from the general principle that contracts for permanent employment are terminable at the will of either party. 408 Mich. at 596, 292 N.W.2d 880 (citing *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315

(1937)). Finally, unlike *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), in which a *de facto* tenure system implicitly gave a teacher a legitimate claim of entitlement to tenure notwithstanding the absence of explicit contractual tenure provisions, Chilingirian can point to no circumstances or city practices indicative of a policy requiring cause prior to termination of the city's administrative officers. For these reasons, we conclude that summary judgment for the defendants was proper on this count.

### III.

We next consider the district court's disposition of Chilingirian's allegations that, in terminating him, the defendants deprived him of a liberty interest for which he was denied an adequate name-clearing hearing. We note that a person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. Any deprivation of those interests, therefore, must be accompanied by notice and an opportunity to be heard to refute any charges against that person. *Id.; see also Burkhart v. Randles*, 764 F.2d 1196, 1201 (6th Cir.1985). Thus, when a "nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." *Id.* (citations omitted). A name-clearing hearing is required only if an employer creates a false and defamatory impression about a particular employee in connection with his termination. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1976). The district court granted the defendants summary judgment on Chilingirian's liberty deprivation and name-clearing claims, noting that if Chilingirian did suffer a liberty deprivation,[8] it was accompanied by the

---

**7.** This unpublished opinion was included in the parties' Joint Appendix at 103–118.

**8.** The district court questioned whether Councilwoman Wilson's comments rose to the level of a constitutional deprivation of a liberty interest

given that Wilson's comments were staunchly refuted at the July 23, 1987, council meeting. Moreover, we have indicated that liberty interests are not implicated under *Roth* by allegations of improper or inadequate performance

requisite due process by virtue of his December 10, 1987, hearing before the council. Rejecting Chilingirian's protestations that his hearing was inadequate due to the council's failure to respond to his eleven submitted questions, the court noted that he was given ample opportunity to refute the charges against him. Both Chilingirian and his attorney spoke at length before the council and were not cut off prematurely. Moreover, as the district court noted, he was not precluded from introducing favorable statements of others to support his claims that the statements made against him were false. The district court found that Chilingirian's challenge to the adequacy of the hearing was based on his failure to receive an apology from the council and his inability to cross-examine council members. As previously indicated, a name-clearing hearing need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid. *See, e.g., Baden v. Koch,* 799 F.2d 825, 830–833 (2d Cir.1986). Chilingirian's failure to receive a hearing in the manner contemplated by him does not alter the fact that he did indeed receive a hearing at which he was extended ample opportunity to clear his name. No more process is required. Accordingly, summary judgment was properly granted on these counts, as well.

### IV.

■ Our disposition of the preceding claims effectively disposes of Chilingirian's remaining claims. Inasmuch as Chilingirian failed to allege that any specific city appointees were treated differently or better than he, there is no basis for his equal protection claim. Moreover, as for Chilingirian's conspiracy related claims (counts

four and five), we note that those claims are premised on his allegations that he was denied property and liberty without due process. Accordingly, our disposition of the property and liberty claims nullifies Chilingirian's conspiracy-related claims. Finally, we find that the district court's decision not to exercise pendent jurisdiction over Chilingirian's state claim alleging interference with advantageous contractual relations did not constitute an abuse of discretion in view of the court's summary disposition of the other six counts of Chilingirian's complaint and dismissal of the state claim without prejudice.

The district court's opinion is AFFIRMED in all respects.[9]

### ATTACHMENT NO. 1

1. Was Mr. Chilingirian terminated as the City Attorney for cause? If so, please indicate specifically those elements which constitute cause.

2. If Mr. Chilingirian was not terminated for cause, please state specifically why he was terminated.

3. It is my understanding that the question of continuing Mr. Chilingirian as City Attorney was first raised in executive session sometime prior to the July 23, 1987 regular meeting of the City Council. Was that executive session taped or recorded in any fashion? Were minutes prepared of that meeting? Why have they not been presented to Mr. Chilingirian or his attorney?

4. Was any decision reached or recommendation made at the executive session? If not, why was this matter placed on the agenda on July 23, 1987 without first concluding the matter in executive session?

---

or, in some cases, by charges of incompetence, neglect of duty or malfeasance. *Lake Michigan College Fed'n of Teachers,* 518 F.2d at 1096. A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation. *Id.* at 1097–98. We need not decide whether Chilingirian suffered a deprivation of liberty given our conclusion that, if he did, his December 10, 1987, hearing provided him with all of the process that he was due.

**9.** Our affirmance of the district court's summary judgment ruling is not grounded on the city's affirmative defense of qualified immunity. Accordingly, we need not consider the application of the city's defense of qualified immunity or whether that defense precluded discovery prior to the district court's summary judgment ruling.

5. When did Councilwoman Wilson first advise the Mayor and City Council that she intended to raise this motion at the July 23, 1987 regular meeting?

6. Councilwoman Wilson's comments seemed to center on incidents which occurred in later March or early April, 1987. Why did Councilwoman Wilson wait until July 23, 1987 to bring this matter before the City Council?

7. Why did the City Council never respond to Mr. Chilingirian's July 30, 1987 letter in which he requested to be advised in writing of the specific charges being made against him? In addition, why did it take the City Council two and one-half months to respond to Mr. Chilingirian's request for a hearing?

8. Councilwoman Wilson stated that she had facts to support her belief that Mr. Chilingirian was not well respected by other attorneys or by judges. What facts did she have to support that suggestion? With whom did she speak? When? Did she have the approval of the Council when she had these discussions? Were the discussions directed toward any specific case that Mr. Chilingirian was handling on behalf of the City? Along the same lines, Councilwoman Wilson suggests that Mr. Chilingirian's court room performance shows a lack of respect. Does she have any facts to support this belief? If so, with whom has she discussed this subject and what has she observed?

9. Councilwoman Wilson suggests that Mr. Chilingirian's bill for one month was $14,000.00. Does the Council acknowledge that the bill the Councilwoman is referring to was divided into at least three parts: that there were bills for Mr. Chilingirian's time, Mr. Berschback's time and Mr. Brennan's time and that Mr. Chilingirian's time on that bill represented less that 50% of the total. There is a suggestion that there were errors in billings. Does the Council acknowledge that one error was in the amount of $95.00 and as soon as it was brought to the attention of Mr. Chilingirian and his firm that it was corrected. That the second error was found by Mr. Chilingirian himself, not by Councilwoman Wilson or any other City official, was in the amount of $190.00, and was immediately shown as a credit on the next month's bill.

10. In the three and one-half years preceding the July 23, 1987 City Council meeting, had any City Council member ever complained, in either a regular meeting or executive session, about the form of Mr. Chilingirian's bills or any alleged billing errors?

11. Does the Council agree with the statements made at the July 23, 1987 meeting that of the 53 cases handled by Mr. Chilingirian, in 51 the City prevailed and that after July 23, 1987 the two remaining cases in the Court of Appeals were both ruled upon and the City prevailed. Is the City Council aware that Mr. Chilingirian was solely responsible for the preparation of the brief in the airport case? Is the Council aware that the second case on appeal, *Adams v. City of Fraser*, was taken to the Court of Appeals solely at Mr. Chilingirian's expense, that the City was not charged for any of his time and the order entered by the Appeals Court voided an order which would have required the City of Fraser to pay $2,300.00 in connection with a Freedom of Information Act issue and vindicated the City of Fraser's legal position.