Donald D. **GREGORY,** Plaintiff,

v.

James C. **HUNT, et al.,** Defendants.

No. 89–3008–TUA.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 9, 1991.

478

David M. Sullivan, Memphis, TN, for plaintiff.

Ronald Leadbetter, Knoxville, TN, for defendants.

## ORDER ON QUALIFIED IMMUNITY

TURNER, District Judge.

Presently before the court is the issue of absolute or qualified immunity for the six named individual defendants sued in their individual capacities. Plaintiff alleges violations of his civil rights pursuant to the Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, 1985, and 1986 as well as pendant state claims for defamation, breach of contract, procurement of breach of contract and tortious interference with contract rights, negligent deprivation of statutory rights, and violation of the Tennessee Human Rights Act. He seeks reinstatement, back pay and benefits, compensatory damages, punitive damages and costs and attorneys fees in accordance with 42 U.S.C. § 1988.

Plaintiff was employed as a campus police officer by the University of Tennessee–Memphis ("University") on June 27, 1983. On January 27, 1989, Assistant Vice Chancellor for Security Affairs, Warren J. Shadko ("Shadko"), delivered an employment termination letter to plaintiff effective that day. There was no notice or pre-termination hearing. The same day plaintiff delivered a written request for a hearing to Mary Finn ("Finn"), Manager of Personnel Services/Human Resources. Finn informed him that because he was terminated for "inadequate work performance," he was not entitled to a hearing under the written University policies and procedures. (Gregory Aff.). Finn advised plaintiff that he could submit a written request to Chancellor James C. Hunt ("Hunt") for a hearing.[1] *Id.*

On January 30, 1989, plaintiff delivered a letter to Hunt requesting a hearing on his termination. *Id.* Plaintiff's counsel later requested that Hunt provide the specific reason(s) for plaintiff's termination. *Id.* Hunt complied with the request. Plaintiff's attorney then addressed the reasons for termination in a brief. *Id.* Hunt subsequently agreed to conduct an informal hearing.

The hearing was held on May 3, 1989. Hunt allowed plaintiff to make a statement. Shadko was also allowed to make a statement. Shadko's statement contained "incidents" not previously cited, and he referred to documents not furnished to plaintiff's counsel. *Id.* Hunt ordered plaintiff's attorney not to confer with plaintiff during the hearing but allowed them to confer outside the hearing room. *Id.* Plaintiff objected to the introduction of the new material and Hunt's refusal to allow plaintiff's attorney to confer with or advise him during the course of the hearing. *Id.* Hunt inquired if plaintiff wished to continue the hearing; plaintiff replied that he would not participate any further.

---

1. Shadko completed a University of Tennessee Personnel Action Form for the plaintiff's personnel file a day or two later indicating the reason for termination as "failure to follow clear instructions." (Shadko Aff.). Several days after termination, John Butler, Deputy Chief of the Office of Security Affairs, completed a change of status form for the Tennessee Peace Officer Standards and Training Commission stating that plaintiff had been terminated for violating department policy and procedures. (Butler Aff.).

Hunt allowed Shadko to reply to the plaintiff's brief with a position paper submitted on May 17, 1989. Hunt forwarded a copy of the position paper to plaintiff's attorney who submitted a reply. On July 11, 1989, Hunt upheld plaintiff's termination but offered plaintiff immediate reemployment at an entry level position. Plaintiff's attorney wrote to Lamar Alexander, President of the University of Tennessee, and asked him to intervene. Alexander refused.

On November 13, 1989, plaintiff filed a complaint naming the University of Tennessee and six University officials, both individually and in their official capacities, as defendants. On January 8, 1990, defendants filed a motion to dismiss or for summary judgment asserting several defenses including absolute and qualified immunity. Plaintiff notified defendants' attorney that he would begin taking the depositions of defendants on February 5, 1990. Defendants responded by filing a motion for a protective order to prevent the depositions being taken until the Motion to Dismiss or for Summary Judgment had been decided. The court issued an order on March 2, 1990, staying discovery on all issues not specifically tailored to the question of defendants' qualified immunity.

### Qualified Immunity

■ When governmental officials are sued in their individual or personal capacities qualified immunity may attach under certain circumstances. Governmental officials who perform "discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The question of qualified immunity is a purely legal issue for the trial judge to determine before trial. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988) (citing *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir.1985), *cert. denied*, 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987)).

■ The question of whether a government official will be protected by qualified immunity is generally determined by the "ob-jective legal reasonableness" of his or her action in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The *Anderson* Court described the level of generality at which legal rights become clearly established law:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted). The relevant question in qualified immunity cases is thus whether a reasonable official in the defendant's position could have considered his actions lawful according to existing law. *Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); *Poe v. Haydon*, 853 F.2d 418, 423–24 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). To determine the law existing at the time of the alleged violation, the court looks to the United States Constitution, the federal statutes, and federal case law then current. *See Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987).

■ After a defendant has raised the defense of qualified immunity by a motion to dismiss, by affirmative defense, or by a motion for summary judgment, the burden of pleading facts which, if true, "describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known" rests on plaintiff. *Kennedy v. City of Cleveland*, 797 F.2d 297, 299 (6th Cir.1986), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987). If plaintiff fails to meet the burden of pleading sufficient facts to state a violation of clearly established law, "the defendant pleading

qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

■ The court, however, may order discovery tailored specifically to the question of qualified immunity. *Poe,* 853 F.2d at 425. After discovery, the court may consider a motion for summary judgment. *Id.* As the Sixth Circuit stated in *Poe:*

> [T]he defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to the truth of the allegations that the defendant in fact committed acts that violate clearly established law.

*Id.*

The issues raised by the defendants' motion for qualified immunity have been thoroughly discussed in the briefs submitted by the respective parties. The court sees no reason to repeat the parties' arguments and will simply rule on the motion.

### *Property Interest*

■ Plaintiff did not have a clearly established property interest in continued employment with the University at the time of his termination. There is no evidence of a written or oral express contract between plaintiff and the University. At most, plaintiff alleges an implied contract.[2] *See Woolsey v. Hunt,* 932 F.2d 555, 566 n. 9 (6th Cir.), *cert. denied,* 502 U.S. 867, 112 S.Ct. 195, 116 L.Ed.2d 155 (1991). Defendants' belief that plaintiff was an "at will" employee is supported by the University's Personnel Policy:

> Faculty are employed for a term of one year or other specified period of time sub-

ject to renewal in accordance with the policies and procedures set forth in the applicable Faculty Handbook. All other employees are not employed for a specified period of time but, instead, serve on an "at will" basis subject to the policies and procedures set forth in the Personnel Policies and Procedures Manual.

(University of Tennessee Personnel Policy, Section 100, Appendix A, Hunt Aff.). In addition, the *Employee Handbook,* submitted by plaintiff, states:

> The official policies and procedures of UTCHS are maintained in the Personnel Policy and Procedures Manual. That publication is available in each departmental office and should be referred to whenever it is necessary to assure that information regarding University policies and procedures is accurate and current.

(*Employee Handbook,* Human Resources, under "Purpose"). The court finds that plaintiff was an "at will" employee of the University and therefore had no property interest in continued employment.

### *Liberty Interest*

■ "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris,* 882 F.2d 200, 205 (6th Cir.1989). If an employer creates a "false and defamatory impression" about an employee in the course of the termination of his employment, notice and an opportunity to clear his name must be given.[3] *See id.*

Plaintiff contends that Shadko's statement on a "University of Tennessee Personnel Ac-

---

**2.** Plaintiff's reliance on *Woolsey v. Hunt,* No. 84–2949–G, is misplaced because the Sixth Circuit reversed and vacated that opinion in May 1991. *See Woolsey v. Hunt,* 932 F.2d 555 (6th Cir.), *cert. denied,* 502 U.S. 867, 112 S.Ct. 195, 116 L.Ed.2d 155 (1991). In *Woolsey,* defendants/appellants argued that "the implied promise or mutually explicit understanding found to exist by the district court fails to establish contractual rights under Tennessee law." *Id.* at 563. The Sixth Circuit held, in reversing the district court, that "Tennessee does not recognize the enforcement of an implied contract against the state and has not done so since 1980." *Id.* at 564.

**3.** The Eleventh Circuit uses the following standard for determining whether the deprivation of a person's liberty interest occurred without due process of law: plaintiff must prove "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing." *Buxton v. City of Plant City, Fla.,* 871 F.2d 1037, 1042–43 (11th Cir.1989). Placing such statements in a file which is a public record was held to be publication. *Id.* at 1045.

tion Form" that plaintiff was terminated for "failure to follow clear instructions" and Butler's statement on a Tennessee "Peace Officer Standards and Training Commission–Change of Status" form that plaintiff was terminated for "viol. Dept. Policy and Procedures 1–27–89" were untrue and kept him from being employed by the Memphis Police Department. (Gregory Aff.). Essentially plaintiff argues that he was stigmatized by false statements placed on public documents by his supervisors and that the false statements kept him from being employed by the Memphis Police Department. Defendants' argument that the documents were executed several days after plaintiff's termination and therefore not "in the course of the termination of employment" is without merit. If this were true, officials could avoid liability by simply waiting several days after termination to fill out any necessary forms stating the reason(s) for an employee's termination.

The court, however, finds that plaintiff received an adequate opportunity to clear his name post-termination. Plaintiff was given the opportunity to respond to the reasons for his termination by the Chancellor of the University at an informal hearing on May 3, 1989. He prematurely terminated his own hearing by stating that he did not wish to continue. Plaintiff was provided an opportunity to respond in writing to any additional incidents mentioned at the hearing. Hunt gave full consideration to plaintiff's written reply in his final decision. (Appendix C, Hunt Aff.). A name clearing hearing need not comply with formal procedures to be valid.[4] Chilingirian, 882 F.2d at 206 (citing Baden v. Koch, 799 F.2d 825, 830–33 (2d Cir.1986)).

### James C. Hunt

In Cleavinger v. Saxner, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the Supreme Court listed several factors to be considered in granting absolute immunity:

And in Butz the Court mentioned the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal. (citation omitted).

474 U.S. at 201–02, 106 S.Ct. at 501 (citing Butz v. Economou, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978)). After considering the above factors, the court finds that Hunt's actions were more administrative than judicial. Therefore, qualified immunity shall be considered rather than absolute immunity.

The court finds no Fourteenth Amendment due process violations, and plaintiff has failed to provide sufficient evidence to create a genuine issue of fact that Hunt violated any clearly established constitutional or federal laws. Hunt is therefore entitled to summary judgment on the issue of qualified immunity.

### Howard Carmen, Warren Shadko, John Butler, Mary Finn, and Betty Puckett

The court finds no Fourteenth Amendment due process violations, and plaintiff has failed to provide sufficient evidence to create a genuine issue of fact that Carmen, Shadko, Butler, Finn, or Puckett violated any clearly established constitutional or federal laws. Carmen, Shadko, Butler, Finn, and Puckett are therefore entitled to summary judgment on the issue of qualified immunity.

### Conclusion

1. Plaintiff was an "at will" employee of the University and possessed no constitutionally protected property interest in continued employment with the University.

2. Plaintiff received an adequate post-termination hearing which satisfied any due process requirement that plaintiff be given an opportunity to clear his name.

---

4. Hunt upheld plaintiff's termination but offered reemployment as an entry level Police Officer with longevity credit for his prior service. (Appendix C, Hunt Aff.).

3. Defendants Hunt, Carmen, Shadko, Butler, Finn, and Puckett are entitled to summary judgment on the issue of qualified immunity.

IT IS SO ORDERED.