974 F.2d 1338
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Glenn PRICHARD, Plaintiff-Appellant,
v.
Larry LAFFERTY, Larry Jones, Sam Whitt and Dewey Harlis,
individually and as chairperson and members of the Board of
Education of Martin County, Ky.; Martin County Schools;
Board of Education of Martin County, Defendants-Appellees.
 No. 91-5257.
 United States Court of Appeals, Sixth Circuit.
 Aug. 25, 1992.
 
 Before KENNEDY, DAVID A. NELSON and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Glenn Prichard, the former superintendent of the schools in Martin County, Kentucky, brought this action against defendants, the Board of Education of Martin County (the Board), the Martin County Schools, and Board members Larry Lafferty, Larry Jones, Sam Whitt, and Dewey Harlis, individually and in their official capacities as Board members. The suit, brought pursuant to 42 U.S.C. § 1983, alleges violations of Prichard's substantive and procedural due process rights arising out of the Board's dismissal of him. The district court granted summary judgment for defendants. We affirm the district court's granting of summary judgment, but for the reasons outlined below.
 
 I.
 
 2
 Between 1983 and 1989, the Martin County, Kentucky, School System had six different school superintendents. In the spring of 1988, the Board of Education began looking for a new school superintendent. On June 6, 1988, the Board by a 3-2 vote hired Prichard as superintendent under a four-year contract beginning July 1, 1988.
 
 
 3
 In November of 1988, two of the three Board members who had voted to hire Prichard were defeated in the Board election. On March 7, 1989, the Board voted 4-1 to suspend Prichard with pay, approved charges for removal to be brought against Prichard, and scheduled an evidentiary hearing. The charges for removal were "spread on the Minutes of the Board" and given to the superintendent fifteen days before action on the removal was taken, as required by Ky.Rev.Stat. § 160.350. Those charges, which were made public through the local media, included: hiring more than 100 non-teaching personnel at the 10 schools in contravention of a State Department of Education report; hiring personnel for political reasons; transferring personnel from one school to another based on favoritism; refusing to sign the Board's official minutes and refusing to permit the chairperson to sign the minutes as required by state law; being insubordinate; not giving the Board financial reports about new personnel; attending illegal Board meetings from which some Board members were excluded; being politically loyal to former Board members; failing to oversee maintenance and supply needs for the schools; and being irresponsible in providing the State Board of Education with information.
 
 
 4
 On March 13, 1989, Prichard sued the Board in state circuit court, alleging that the Board had violated or threatened to violate his civil rights. He sought an injunction to overturn the suspension, to enjoin the Board from interfering with his duties pending a hearing on the charges, and to prevent Board member Dewey Harlis from hearing the charges and voting on the issue in view of Harlis's election promise to "get rid of" Prichard. Ultimately, the Supreme Court of Kentucky held that the Board had no authority to suspend plaintiff before a hearing and remanded the case to the Board for the evidentiary hearing. The court stated that it would not rule on Harlis's partiality until after the hearing.
 
 
 5
 The Board appointed one of its own attorneys as hearing officer to oversee the evidentiary hearing. At the hearing on May 25-26, 1989, the Board heard 16 hours of testimony. One witness who gave unfavorable testimony about Prichard was defendant Lafferty, the Board Chairperson. As a member of the Board, Lafferty also was among those who ultimately ruled on the charges against Prichard. The Board found that Prichard was guilty of misconduct and discharged him by a vote of 4-1. Prichard did not appeal the Board decision and did not prosecute his pending suit in state court. That case was dismissed as moot on August 29, 1989. Instead, Prichard filed this section 1983 action, claiming violations of his substantive and procedural due process rights, and seeking damages, reinstatement, backpay, attorney's fees and costs. On January 29, 1991, the district court granted summary judgment in favor of all defendants, stating that Ramsey v. Board of Education, 844 F.2d 1268 (6th Cir.1988), was controlling and that it required non-tenured public employees whose employment contracts were prematurely terminated to bring state breach-of-contract claims instead of federal section 1983 claims.
 
 II.
 
 6
 We find that the district court did not err in granting summary judgment for defendants, although on grounds other than those stated by the district court.
 
 
 7
 We review a district court's granting of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). In opposing a summary judgment motion, the non-moving party has the burden of setting forth "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).
 
 A.
 1. The Property Interest
 
 8
 The district court is not correct in finding that Prichard's claim is "nothing more than a contractual dispute." We find that Prichard had a property interest created both by his four-year contract and by state law. Property interests are not created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). Property interests can be created by explicit contract terms or by implied agreements from the " 'promisor's words and conduct in light of the surrounding circumstances.' " Perry v. Sinderman, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700 (1972).
 
 
 9
 Prichard had a property interest in his employment that was created by his four-year contract. The Board deprived Prichard of this interest by first suspending him (although with pay) and then removing him before the end of his four years. In addition, Prichard had a property interest created by Ky.Rev.Stat. § 160.350, which permitted a Board to remove a superintendent only "for cause."[1] This statute created an entitlement not to be removed but for cause.[2] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491 (1985) (Ohio statute prohibiting dismissal except for misfeasance etc. created property right). Thus, before Prichard could be deprived of those property rights, he was entitled to due process of law.[3]
 
 
 10
 2. Process Due for Property Interest Deprivation
 
 
 11
 The Board did not violate Prichard's constitutional rights because the procedures followed by the Board provided Prichard with all the process that was due under Loudermill, 470 U.S. at 538-39, 105 S.Ct. at 1491. To be constitutionally adequate, a pre-deprivation hearing must provide a public employee "the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." Parratt v. Taylor, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915 (1981), abrogated in part, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 (1986). However, " 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." Loudermill, 470 U.S. at 545, 105 S.Ct. at 1495 (quoting Mathews v. Eldridge, 424 U.S. 319, 343, 96 S.Ct. 893, 907 (1976)). The employee need only receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. Prichard's 16-hour hearing in front of the Board clearly met these requirements.[4]
 
 
 12
 None of Prichard's assertions about being deprived of due process in connection with that hearing is legitimate. First, Prichard contends that the Board refused to issue subpoenas that would have allowed him to put on evidence in his favor. The Board counters that Prichard never requested it to issue subpoenas, but only requested subpoenas in blank, which the Board refused to issue. It argues that, in any case, it could not issue subpoenas to anyone but employees of the Board. Clearly there is a dispute over whether Prichard asked that subpoenas be issued to any specific individuals, or in blank, and whether the Board was bound to issue subpoenas either in blank or to individuals who were not employees of the Board.[5] However, this dispute is not material. Because the Board did not need to provide a forum in which witnesses were compelled to testify, the Board was not required to issue subpoenas for Prichard, and any failure to do so did not constitute a deprivation of due process.
 
 
 13
 Second, the Board had authority both to level charges against its superintendent and to hold the hearing and decide whether the charges were valid. In Hortonville J.S.D. No. 1 v. Hortonville Educ. Assn., 426 U.S. 482, 96 S.Ct. 2308 (1976), the Supreme Court held that a school board could decide to dismiss striking teachers, although it had also negotiated with the strikers and learned the reasons for the strike. Id. at 492, 96 S.Ct. at 2314. The Court held that "state law vests the governmental, or policymaking, function exclusively in the School Board ..." Id. at 495, 96 S.Ct. at 2315. It concluded, "A showing that the Board was 'involved' in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power." Id. at 497, 96 S.Ct. at 2316; Vanellia v. Reynolds School Dist., 667 F.2d 773, 779-80 & n. 10 (9th Cir.1982) (school board's earlier participation in administrative process leading to teacher's discharge did not alone make it impermissibly biased in later hearing). Subsequently, in Duchesne v. Williams, 849 F.2d 1004, 1006 (6th Cir.1988), cert. denied, 489 U.S. 1081, 109 S.Ct. 1535 (1989), this Court sitting en banc held that the employee's pretermination hearing required by Loudermill need only provide "[t]he right to respond before the official responsible for the discharge ..." Id. The Court found that this "right-of-reply" hearing before the decisionmaker has advantages over a formal pretermination hearing before an impartial judge, which include "[a] supervisor's more concrete understanding and familiarity with the nature of the employee's job and conduct, his supervisor's potential willingness to forgive or give another chance, the informality of the 'hearing' before the supervisor, and the lack of adversary formality and contentiousness associated with lawsuits." Id. at 1008. The Duchesne Court, then, followed Hortonville 's holding that an employer's involvement in, and familiarity with, an employee's discharge does not render a pretermination hearing procedurally deficient.[6] Here, Prichard needed only the opportunity to appear before the Board recommending his termination. In fact, the Martin County Board is the only body under state law that has authority to issue charges against a superintendent and to decide whether there is cause for dismissing that person. The Board is neither required, nor permitted under state law, to relinquish or delegate this duty to a third-party.
 
 
 14
 Third, the Board was justified in asking one its attorneys, John Triplett, to act as hearing officer. Neither his familiarity with the situation nor his relationship to the Board per se disqualified him. Hortonville, 426 U.S. at 493, 96 S.Ct. at 2314; Duchesne, 849 F.2d at 1008. Triplett indicated at the hearing, in response to Prichard's request that Triplett recuse himself, that he sought to oversee a fair and impartial hearing, and the record supports a finding that he in fact did so.
 
 
 15
 Fourth, Board Chairman Lafferty's testimony at the hearing and subsequent vote to dismiss Prichard did not deprive Prichard of due process. Lafferty's testimony was necessary because, as chairperson of the Board of Education, he had relevant information regarding Prichard's past performance. His familiarity with the situation did not disqualify him, and the record contains no evidence that he harbored any personal animosity toward Prichard, or had a personal or pecuniary interest in terminating Prichard's employment. Hortonville, 426 U.S. at 492, 96 S.Ct. at 2314.
 
 
 16
 Fifth, Prichard has not shown that Board member Harlis's pre-election statement about Prichard disqualified him from serving at the pretermination hearing. For a decisionmaker to have "disqualifying bias," the decisionmaker must have a "personal or financial stake in the decision that might create a conflict of interest" or must harbor "personal animosity" toward the employee. Hortonville, 426 U.S. at 491-92, 96 S.Ct. at 2313-14. In Hortonville, the Supreme Court found no disqualifying bias even though the school board had participated in strike negotiations, had taken a position in public on a policy issue related to the dispute, and had initiated charges against the strikers. Id. The Hortonville Court held that a decisionmaker is not disqualified "simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.' " Id. at 2314 (quoting United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 1004 (1941)). "[P]ersonal bias must stem from a source other than knowledge a decision maker acquires from participating in a case." Bowens v. North Carolina Dept. of Human Resources, 710 F.2d 1015, 1020 (9th Cir.1983). See Brasslett v. Cota, 761 F.2d 827, 837 (1st Cir.1985) (no bias when the town manager made an initial decision to terminate the fire chief before a hearing tribunal was held); Morris v. City of Danville, Va., 744 F.2d 1041, 1044 (4th Cir.1984) (no bias where city manager participated in bringing charges). But see Staton v. Mayes, 552 F.2d 908, 913-15 (10th Cir.1977) (bias found where three Board of Education members had previously indicated that the superintendent should be removed), cert. denied, 434 U.S. 907, 98 S.Ct. 309 (1977); Salisbury v. Housing Auth., 615 F.Supp. 1433, 1441 (E.D.Ky.1985) (authority members who decided termination had pecuniary interest and personal bias because of prior disputes with plaintiff).
 
 
 17
 Here, Harlis has not been shown to have a disqualifying bias. Tim Justice, a friend of Harlis, stated in a deposition that Harlis told him before Harlis's election to the Board that "he felt that they [the Board] would have to get rid of Mr. Prichard because in his words, he said, 'I don't feel that he will try to get along with us and he will try to make us look bad.' " Harlis, however, stated under oath at Prichard's hearing that he had meant only that Prichard must be supportive of the schools and of the Board. Harlis's pre-election statement, if he did make it, does not rise to the level of "personal animosity" or indicate a "personal or financial stake in the decision." Hortonville, 426 U.S. at 492, 96 S.Ct. at 2314. Prichard failed to make a showing that the Board and Harlis were "not 'capable of judging a particular controversy fairly on the basis of his own circumstances.' " Id. at 493, 96 S.Ct. at 2314. (citing United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 1004 (1941)). Due process did not entitle Prichard to have Harlis precluded from participating in the hearing before the Board of which he was a member.
 
 
 18
 Accordingly, we find that Prichard received all the process required before the Board could deprive him of his employment and that the pre-termination hearing satisfied the requirements for procedural due process.
 
 B.
 1. The Liberty Interest
 
 19
 Prichard also claims that he was deprived of a liberty interest because he was stigmatized and his reputation was injured by the suspension, the charges and the termination. We find that Prichard was not deprived of a liberty interest, but even if he were, he received all the process necessary to permit him to clear his name.
 
 
 20
 While a person can have a liberty interest in preserving his "good name, reputation, honor or integrity," Board of Regents v. Roth, 408 U.S. at 574, 92 S.Ct. at 2707, a liberty interest in one's reputation is implicated only under certain circumstances. First, the stigmatizing statements must be made in conjunction with another deprivation, such as a termination from employment. Paul v. Davis, 424 U.S. 693, 709-10, 96 S.Ct. 1155, 1164-65 (1976) (narrowing Roth by requiring constitutional protection only if assault on reputation occurs along with alteration of legal status); Ghosh v. Ohio University, No. 87-3899/87-4115, at * 5-6 (6th Cir. Nov. 8, 1988) (unpublished per curiam) (tangible alteration of legal status needed), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641 (1989). This may occur "if the government dismisses an employee based on charges 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.' " Brandt v. Board of Co-op Educ. Servs., 820 F.2d 41, 43 (2d Cir.1987) (quoting Board of Regents v. Roth, 408 U.S. at 573, 92 S.Ct. at 2707 (1972)). However, liberty interests are not implicated by allegations of improper or inadequate performance, or in some cases by charges of incompetence, neglect of duty or malfeasance. Chilingirian v. Boris, 882 F.2d 200, 205-06 n. 8 (6th Cir.1989). "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." Id. Here, any stigmatizing statements made about Prichard were made in connection with his termination. While the charges leveled and statements made at the hearing related to Prichard's job performance, they also arguably reflected on his integrity, his honesty and his ability to follow regulations. These allegations could be said to close off "a definite range of opportunity." Accordingly, Prichard arguably met this first requirement of a liberty interest.
 
 
 21
 Second, the stigmatizing statements or charges must be made public. Brandt, 820 F.2d at 43; Bishop v. Wood, 426 U.S. 341, 348-49, 96 S.Ct. 2074, 2079 (1976). Here, the charges were made public in the Board's minutes and subsequently through the local media, which covered the Board meeting at which the Board announced the charges.
 
 
 22
 Third, Prichard also had to claim that the charges against him were false. Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884 (1977); Burkhart v. Randles, 764 F.2d 1196, 1201 (6th Cir.1985) (employee stigmatized by voluntary, public dissemination of false information in decision to terminate employment). In the record, Prichard does not explicitly state that the charges are false, but he implies this in several ways.[7]
 
 
 23
 Finally, the dissemination must be voluntary. Chilingirian v. Boris, 882 F.2d at 205 (" 'voluntary, public dissemination' " needed); Burkhart, 764 F.2d at 1201 (same). Here, the Board made the statements about Prichard pursuant to Ky.Rev.Stat. § 160.350, which requires that a "[w]ritten notice setting out the charges for removal be spread on the Minutes of the Board and given the superintendent fifteen (15) days before action is taken on his removal." Ky.Rev.Stat. § 160.350. In Kendall v. Board of Educ., 627 F.2d 1, 5 (6th Cir.1980), another panel of this court held that where the Board disseminates the charges containing the allegedly false information only as required by state law governing the termination proceedings, the Board has not voluntarily disseminated the information and therefore has not deprived the employee of any liberty interest. Id. We are bound by Kendall;[8] Because the disclosure here was made pursuant to Kentucky state law, it was not a voluntary disclosure. Thus, we find that the Board's termination of Prichard did not implicate a liberty interest because it did not meet the final element--voluntariness. However, even if we were to find that the Board's suspension and termination implicated a liberty interest, for the reasons which appear in the ensuing section, we also find that the Board's procedures provided Prichard with all the process due him for a deprivation of this interest.
 
 
 24
 2. Process Due for Liberty Interest Deprivation
 
 
 25
 Any deprivation of one's reputation, good name, honor and integrity must be accompanied by notice and an opportunity to be heard through a "name-clearing hearing." Chilingirian, 882 F.2d at 205. A name-clearing hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." Id. at 206. No particular procedures are required except that the person receive a hearing at which he receives an opportunity to clear his name. Id. Here, as discussed above, the 16-hour pre-termination hearing afforded Prichard an ample opportunity to prove that the charges lodged against him were false, if that were in fact the case, and to clear his name. Prichard received all the process required for a name-clearing hearing.[9]
 
 III.
 
 26
 For the reasons set out above, we hold that the Board and its members did deprive Prichard of a property interest. However, the pre-termination hearing held by the Board of Education provided Prichard with all the pre-deprivation process to which he was entitled to contest the property deprivation. In addition, we find that the termination did not deprive Prichard of a liberty interest. However, even if the termination had implicated a liberty interest, Prichard received all the process necessary to clear his name. Accordingly, the district court's granting of summary judgment is AFFIRMED.
 
 
 27
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 28
 I concur in the judgment and in all of the opinion except Part IIA. The thesis of Part IIA ("The district court is not correct in finding that Prichard's claim is 'nothing more than a contractual dispute' ") strikes me as incorrect.
 
 
 29
 The district court considered the instant case analogous to Ramsey v. Brd. of Ed. of Whitley Co., Ky., 844 F.2d 1268 (6th Cir.1988). Citing Loehr v. Ventura Co. Community College District, 743 F.2d 1310, 1320 (9th Cir.1984)--a case which, like this one, involved a superintendent hired under a 4-year contract--Ramsey stated unequivocally that "[w]hen a person is hired for a fixed period of time ... and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract." Ramsey, 844 F.2d at 1273. I cannot fault the district court for following the guidance we tried to give when we published the opinion in Ramsey.
 
 
 30
 In the case at bar it is clear that during the term of his 4-year contract, plaintiff Prichard was subject to removal only for cause.[1] Ramsey teaches that Prichard thus had a "finite" property interest in continued employment for the balance of the four years. Id. at 1274. Ramsey also teaches that "the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action." Id. No federal action lies under § 1983, Ramsey tells us, because the common law breach of contract action is adequate to make the plaintiff whole.
 
 
 31
 The reasoning of Ramsey echoes that of Parratt v. Taylor, 451 U.S. 527 (1981), where the Supreme Court held that a prisoner who had been negligently deprived of his property interest in a hobby kit did not suffer any violation of his due process rights as long as the state's ordinary common law remedies provided an adequate means of securing post-deprivation redress. (This reasoning was not called into question in Daniels v. Williams, 474 U.S. 327 (1986), which overruled Paratt on the question whether a victim of the state's negligence could be "deprived" of anything in a constitutional sense. Parratt held that there was a deprivation, but that it was not unconstitutional; Daniels held that there was no deprivation to begin with. Neither decision conflicts with the logic of Ramsey.)
 
 
 32
 The reasoning employed in Ramsey was correct, in my view--as long as one assumes that the plaintiff had a finite property interest--and I think the district court was correct in following Ramsey 's reasoning here. If the plaintiff in this case had enjoyed life tenure, however, as did the plaintiff in Loudermill, 470 U.S. at 538-39, I agree with my colleagues on the panel that the procedures followed by the defendant board would have provided all the "process" that was "due" under Loudermill.
 
 
 
 [1]
 Ky.Rev.Stat. § 160.350 states:
 A superintendent of schools may be removed for cause by a vote of four fifths ( 4/5) of the membership of a Board of Education. Written notice setting out the charges for removal shall be spread on the Minutes of the Board and given the superintendent fifteen (15) days before action is taken on his removal.
 This statute was supplanted by Kentucky's Education Reform Act of 1990.
 
 
 [2]
 The Kentucky Supreme Court has defined "cause" as "a cause relating to and affecting the administration of the office and ... restricted to something of a substantial nature directly affecting the rights and interests of the public." Wicker v. Board of Educ., 826 F.2d 442, 444 n. 1 (6th Cir.1987) (quoting Smith v. Board of Educ., 264 Ky. 150, 94 S.W.2d 321, 325 (1936))
 
 
 [3]
 The district court failed to recognize that Prichard has a property interest created by his contract and by statute. The district court relied on Ramsey v. Board of Educ., 844 F.2d 1268 (6th Cir.1988), in finding that Prichard's claim merely involved a contractual dispute that must be resolved in state court. Ramsey involved a teacher who brought a section 1983 suit after the Board of Education cut her accumulated sick days from 142 to 29. Id. at 1269. The Ramsey court in dicta noted that a state breach of contract action was the appropriate remedy for a person who is hired for a fixed period of time or under an at-will contract and then dismissed prematurely. Id. at 1273. It stated:
 When a person is hired for a fixed period of time or pursuant to a contract providing for employment "at will" or impliedly subject to removal upon the bona fide elimination of the position, and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract.
 Id. That dictum in Ramsey, however, was directed not toward the right but toward the remedy, and acknowledged that a nontenured employee had a property interest in employment for the duration of the employment contract. Id. And, in any case, Prichard had a property right created by Kentucky statute as well as by a contract for a definite period of time, and therefore this case presents a different situation from that described in dicta in Ramsey.
 
 
 [4]
 Kentucky Revised Statute § 160.350 itself sets up procedural requirements for dismissing a public employee for cause, including that written notice of the charge be made public and that the superintendent be given notice 15 days before action is taken on his removal
 However, having created the property right in public employment, a state " 'may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.' " Loudermill, 470 U.S. at 541, 105 S.Ct. at 1493 (quoting Arnett v. Kennedy, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650 (1974)). And, the adequacy of those procedures is not a matter of state law. Loudermill, 470 U.S. at 541, 105 S.Ct. at 1493. Here, although the statute's procedural requirements would not have been constitutionally adequate, the Board went beyond that and provided Prichard a 16-hour hearing on the charges for dismissal.
 
 
 [5]
 Prichard relies on Ky.Rev.Stat. § 160.300, which states that a Board "may, in any investigation or proceeding before it, concerning a matter that may be a proper subject of inquiry by it, summons witnesses by subpoena, enforce their attendance, and require that they testify under properly administered oath." Ky.Rev.Stat. § 160.300
 
 
 [6]
 A panel of this Court in Kendall v. Board of Educ. of Memphis City, 627 F.2d 1, 5 (1980), stated that the school board could not provide a fair and impartial hearing because "Kendall was compelled to appear before the same administrators who had investigated the incidents and recommended her dismissal. Since factfinding on the accusations was necessary, due process requires that the same administrators who investigated the matter not determine her guilt or innocence." Id. However, Kendall was implicitly overruled by the en banc decision in Duchesne, 849 F.2d at 1008. Duchesne explicitly held that due process requires only that an employee be given the opportunity to be heard by the same administrators who dismissed him. Id. Kendall thus received all the process that Duchesne later held was required because she was given the chance to explain her story to her supervisors before she was suspended or terminated. She also had the opportunity to appeal the decision through the grievance procedure, but she filed the grievance too late. Kendall, 627 F.2d at 3-4. See also Hortonville, 426 U.S. at 491, 96 S.Ct. at 2314 ("Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker.")
 
 
 [7]
 In his answer and his motion for summary judgment, Prichard puts the word "charges" in quotation marks. In his deposition, he notes that he "never received anything in writing whatever, to tell me what charges were true and what charges were untrue ..." In his motion for summary judgment, he refers in the abstract to a situation in which " 'charges' against him could be manufactured ..." and indicates that the charges against him were brought "all under the pretext of removing him 'for cause.' "
 
 
 [8]
 We note that Kendall was overruled by our en banc decision in Duchesne, 849 F.2d at 1008, only as to Kendall 's holding that the school board could not provide a terminated teacher with a fair and impartial hearing because "due process requires that the same administrators who investigated the matter not determine her guilt or innocence." Id. See supra note 6 for a discussion of Kendall in relation to Duchesne. Kendall remains the law in this circuit as to its holding concerning the requirements for a deprivation of a liberty interest
 
 
 [9]
 Prichard did not appeal the Board's termination decision and did not request a post-deprivation name-clearing hearing. Instead, he filed this section 1983 suit. Therefore, we need not address whether Prichard was entitled to a post-deprivation name-clearing hearing. We need only reach the question of whether the pre-deprivation hearing was adequate to clear his name
 
 
 [1]
 I do not read Ky.Rev.Stat. § 160.350 as saying that the plaintiff was entitled to automatic renewal of his contract. As the plaintiff's predecessors could attest--see Part I of the panel opinion--Kentucky school superintendents do not enjoy life tenure