105 F.3d 659
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kimberly CLARK, Plaintiff-Appellant,
v.
Kathy BURNS and the Electric Power Board of Chattanooga,
Tennessee, Defendants-Appellees.
 No. 95-6196.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1997.
 
 Before: KRUPANSKY, BOGGS, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff has appealed from a district court's grant of summary judgment for defendants on her complaint, which alleged a federal civil rights violation and a state law defamation claim. Plaintiff has averred two errors: (1) the district court improperly concluded that a hearing afforded by her former employer, defendant Electric Power Board of Chattanooga, Tennessee ("EPB"), prior to her termination protected and preserved her right to due process guaranteed by the Constitution; and (2) the district court erroneously concluded that plaintiff presented insufficient evidence to sustain a cause of action for defamation against her former supervisor, defendant Kathy Burns ("Burns").
 
 
 2
 Since 1986, plaintiff, Kimberly Clark ("Clark"), worked for the EPB, a quasi-governmental organization, as an at-will employee in its Customer Information Center ("CIC"). The CIC staggered seven shifts of representatives to respond to customers' concerns via telephone between the hours of 7:00 AM and 8:00 PM, Monday through Friday. To the dissatisfaction of Clark, the shifts were rotated among employees on a monthly basis. Her displeasure escalated and during 1992 and 1993 Clark frequently expressed her objection to her immediate supervisor, defendant Burns. Clark repeatedly suggested that Burns assign employees to work particular shifts on a permanent basis, rather than rotate them. Although Clark's proposal was consistently rejected by Burns, her response on one particular occasion gave rise to the instant controversies.
 
 
 3
 Burns related that during a private meeting on May 6, 1993, she dismissed Clark's complaint as usual and then explained, "[W]e should all be very thankful that we do not have to work 24 hours per day, or 7 days a week, as a lot of companies require their employees to do." Clark remembered the conversation differently. She has contended that Burns said there was a "possibility" that the department would inaugurate 24 hour shifts, weekend shifts, and monitoring of all telephonic conversations. Irrespective of what Burns actually said during this discussion, on the following day two CIC employees reported to her that Clark had cautioned them about impending changes in the working shifts. Apparently, Clark had informed some CIC employees that the EPB planned to add several additional shifts in order to cover an extensive schedule of 24 hour days, 7 days a week. (J.A. at 148.) Unhappy with this notion, some employees contemplated resignation and one promptly submitted a transfer request.
 
 
 4
 Burns attempted to quiet unrest in the department by explaining that the rumor was false. In the course of her efforts she purportedly denounced Clark as a liar, giving rise to the instant defamation charge. Burns also contacted her immediate supervisor, Alice Glenn ("Glenn"), the Superintendent of the Customer Service Department, to discuss the seminal conversation with Clark, the alleged misrepresentation by Clark of this conversation to CIC employees, and the resultant disruption caused by Clark's activities. (J.A. at 149.) Consequently, a meeting among Burns, Glenn, and Clark, to discuss Clark's alleged conduct in circulating the misinformation about the shift changes, was scheduled for May 18, 1993.
 
 
 5
 Before the meeting, Clark told some CIC employees that she secretly intended to tape record the confrontation. One of these employees informed Burns of Clark's intention. At the meeting, Burns advised Clark that she knew about the recorder, asked her to remove it, and ordered her to turn it off. The parties then discussed the events already related. Within a fortnight, Glenn's supervisor, Ronald Earl ("Earl"), also met with Clark to discuss her behavior. In both meetings, Clark denied having told the staff that the shifts would be changed and explained that she had merely indicated that shifts could be changed. Nevertheless, Clark admitted her surreptitious attempt to record the meeting with Burns and Glenn.
 
 
 6
 On May 26, 1993, Glenn prepared a memorandum advising Clark that she intended to seek her termination from the EPB on June 1, 1993 due to her misrepresentations to the CIC employees and her covert attempt to record the May 18, 1993 meeting. Both Glenn and Burns proceeded to Clark's work station, requested her to read the memorandum, gather her belongings, and leave the premises. However, Clark was permitted to remain on the payroll until the EPB afforded her an opportunity to appeal her termination at a hearing before Earl on June 1, 1993. Legal counsel represented Clark at this appellate hearing. After introductory remarks by Earl, Glenn presented her reasons for recommending Clark's termination, including the dissemination of disruptive misinformation among CIC employees and the furtive attempt to tape record a meeting with supervisors. Clark responded to the first charge by denying that she misinformed the other employees because she had purportedly only told them that shift changes were under consideration. She admitted the second charge. Clark's attorney introduced her personnel file into evidence and noted her history of generally positive evaluations and a seven percent pay increase on May 1, 1993. Clark presented no other evidence and called no witnesses. On the next day, Earl issued a letter to Clark upholding Glenn's recommendation to dismiss her. He concluded that Clark's behavior constituted insubordination and misconduct on the job.
 
 
 7
 Clark sought judicial redress in the Circuit Court of Hamilton County, Tennessee, and the case was removed to the United States District Court for the Eastern District of Tennessee. The district court confronted two legal issues. First, Clark sought to invalidate Earl's decision of termination because the EPB appellate process allegedly violated 42 U.S.C. § 1983. Second, Clark sought to recover damages from Burns because the nature of her announcement that Clark had misstated the truth allegedly constituted defamation under Tennessee law. The district court favored both defendants on summary judgment.
 
 
 8
 This court reviews appeals from grants of summary judgment under a de novo standard. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). In this context, such analysis asks the court to assess "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In its pursuit of this goal, the court must "draw all justifiable inferences in favor of the non-moving party." Winningham v. North American Resources Corp., 42 F.3d 981, 984 (6th Cir.1994). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Liberty Lobby, 477 U.S. at 252 (1986). At least one genuine issue of material fact must exist. Middleton v. Reynolds Metals Co., 963 F.2d 881, 882 (6th Cir.1992). A fact is material if it will "affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, 477 U.S. at 248.
 
 
 9
 The district court concluded that Clark was not entitled to recover under her § 1983 claim because she did not assert a constitutionally protected right to continued employment, and even assuming that she had, the EPB had given her all of the due process protection afforded by law. Because a § 1983 plaintiff must prove a constitutionally protected interest as a condition precedent to the court's cognizance of the claim, see Ramsey v. Board of Education, 844 F.2d 1268, 1272-73 (6th Cir.1988), Clark's total failure to proffer any proof of a constitutionally protected property interest was fatal to her § 1983 action. By failing to present evidence on this essential element of her prima facie case below, Clark has waived that issue on appeal. See Travitz v. Northeast Dept. ILGWU Health and Welfare Fund, 13 F.3d 704, 711 (3d Cir.), cert. denied, 114 S.Ct. 2165 (1994); United States v. Tracy, 989 F.2d 1279, 1286 (1st Cir.), cert. denied, 508 U.S. 929 (1993); Fed.R.App.P. 28(a)(3), (5), and (6); cf. John v. Barron, 897 F.2d 1387, 1393 (7th Cir.), cert. denied, 498 U.S. 821 (1990).
 
 
 10
 Regardless, because the sufficiency of a claim to a property interest in employment must be decided by reference to state law, Clark's unchallenged status as an at-will public employee in Tennessee left her no constitutionally protected property interest in continued employment. See Gregory v. Hunt, 24 F.3d 781, 784-85 (6th Cir.1994). In Tennessee, an employee hired for an indefinite period is an employee-at-will, and the employment can be terminated by either party at any time with or without cause. See Graves v. Anchor Wire Corp., 692 S.W.2d 420 (Tenn.Ct.App.1985). Consequently, the district court's dismissal of Clark's § 1983 claim is AFFIRMED.
 
 
 11
 Clark's defamation claim must also fail because even if this panel were to regard the facts most favorably to her claim,[1] Tennessee law follows the general rules that "false statements do not constitute actionable defamation merely because they are false and that the burden of proof rest[s] upon the plaintiff to demonstrate that the [statement] was, in fact, defamatory because it tended to injure plaintiff in h[er] trade, profession, or community standing, or lower h[er] in the estimation of the community or subject h[er] to scorn, ridicule, shame, contempt, or embarrassment." Connaughton v. Harte Hanks Comm., Inc., 842 F.2d 825, 840 (6th Cir.1988), aff'd, 491 U.S. 657 (1989); see Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 820 (Tenn.1994) ("The basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation."); cf. Stones River Motors, Inc. v. Mid-South Pub. Co., 651 S.W.2d 713, 719 (Tenn.Ct.App.1983) ("For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element 'of disgrace.' ") (quoting W. Prosser, Law of Torts, § 111 (4th Ed.1971)). Because Clark has failed to raise a genuine issue that anyone intended to harm her maliciously or that the statements constituted a serious threat to her reputation, the district court's rejection of Clark's defamation claim is AFFIRMED.
 
 
 12
 Accordingly, the district court's judgment of August 24, 1995, is hereby AFFIRMED.
 
 
 
 [1]
 Clark's own conflicting renditions of the facts undermine the credibility of her accounts. In the complaint, Clark alleged that Burns reported plaintiff's "lie" about shift changes to the EPB management. (J.A. at 10 (Vol. I).) In her deposition, Clark alleged that Burns reported plaintiff's "lie" to the employees in the CIC. (J.A. at 43 (Vol. II).)