**Bill IRONS, Plaintiff,**

**v.**

**The CITY OF BOLIVAR, a Public Body Corporate and Politic; David Rhea, Larry McKinnie and Tracy Bynum, Individually and in their Official Capacities of Personnel Board and City Council Members; Mayor Barrett Stevens, Individually and in his Official Capacity; Councilman Randy Hill**

treated more favorably than Plaintiff for similar misconduct. *See Anderson,* 477 U.S. at 248–52, 106 S.Ct. 2505.

and Councilman Todd Lowe, Individually and in their Official Capacities; Paula Wilhite, Individually and in her Official Capacity; and Sheila Dellinger, Individually and in her Official Capacity, Defendants.

No. 1:11–cv–01369–JDB–egb.

United States District Court, W.D. Tennessee, Eastern Division.

Sept. 28, 2012.

Elizabeth Cummings, Michael G. Floyd & Associates, Michael G. Floyd, Law Office of Michael G. Floyd, Memphis, TN, for Plaintiff.

John D. Burleson, Matthew Robert Courtner, Milton Dale Conder, Jr., Rainey Kizer Reviere & Bell, Jackson, TN, V. Latosha Dexter, Rainey Kizer Reviere & Bell, Memphis, TN, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

J. DANIEL BREEN, District Judge.

Plaintiff, Bill Irons, brought this lawsuit after he was terminated from his position as Chief of Police of the City of Bolivar, Tennessee. Before the Court is Defendants, the City of Bolivar, David Rhea, Larry McKinnie, Tracy Bynum, Mayor Barrett Stevens, Randy Hill, Todd Lowe, Paula Wilhite, and Sheila Dellinger's, mo-

tion for summary judgment. (Docket Entry ("D.E.") 15.) For the reasons set forth herein, Defendants' motion is GRANTED.

## I. FACTUAL BACKGROUND

On July 19, 2011, Plaintiff was fired by Mayor Stevens as Chief of Police of the Bolivar Police Department. (Second Am. Compl. ¶ 35, D.E. 42.) On the same day, he was provided written notice of his termination in a letter alleging instances of insubordination, failure to follow directives of the Mayor, and failure to implement mayoral policies. (Stevens Aff., Ex. B, D.E. 15–3.) Plaintiff alleges that his termination was the result of a conspiracy between Stevens and members of the Bolivar city government who wanted him discharged for a variety of reasons including his race, his refusal to endorse Larry McKinnie for Sheriff, his requests to have Paula Wilhite fired from her position as the police chief's secretary, and his refusal to carry out policies that Plaintiff alleges were unconstitutional. (Second Am. Compl. at ¶ 23.) Irons requested and was allowed to appear before the Bolivar Personnel Board to contest his termination. (Id. at ¶ 42.) The Board consisted of three City Council members: Tracie Bynum, Larry McKinnie, and David Rhea. At the hearing, McKinnie read aloud each of the grounds for Iron's discharge and permitted Plaintiff and his attorney to respond in kind. (St. of Undisputed Material Facts ¶ K, D.E. 15–2.) Board members, however, reportedly presented additional reasons for Plaintiff's termination that were not included in his termination letter. (Second Am. Compl. at ¶ 43.) Ultimately, the Board upheld Plaintiff's discharge, and the full City Council, after hearing plaintiff's appeal, affirmed the Board's findings. (Id. at ¶ 45.)

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the motion is supported by documentary evidence, such as affidavits or depositions, the nonmoving party may not rely on his pleadings but rather must provide the Court with facts establishing that there is "a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." Pucci v. Nineteenth Dist. Court, 628 F.3d 752, 759 (6th Cir.2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When the plaintiff fails to establish an element essential to his case, this Court may appropriately enter summary judgment against him. Poss v. Morris (In re Morris), 260 F.3d 654, 665 (6th Cir.2001) (quoting Celotex, 477 U.S. at 322, 106 S.Ct. at 2552). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

## III. ANALYSIS

A. Official Capacity Claims, Fifth Amendment Due Process Claims, and Damages Under the Tennessee Constitution

The parties agree that Plaintiff's claims against the individual Defendants in their

official capacity are redundant since the City of Bolivar is also named as a defendant. Additionally, the parties concur that the Fifth Amendment's Due Process Clause applies only to those actions by the federal government, and that the Plaintiff has not alleged any involvement by federal actors in his complaint. Lastly, Irons concedes that "Tennessee does not recognize an implied private cause of action for damages based upon violation of the Tennessee Constitution." *Wooley v. Madison County*, 209 F.Supp.2d 836, 844 (W.D.Tenn. 2002). Accordingly, Defendants' motion for summary judgment as to the official capacity and Fifth Amendment due process claims, and as to damages under the Tennessee Constitution is GRANTED.

**B. Conspiracy and 42 U.S.C. § 1985(3) Claims**

Irons maintains that Defendants Stevens, Wilhite, Bynum, Rhea, and McKinnie conspired to remove him from his position as Chief of Police. Each of these Defendants is either an employee or representative of the city of Bolivar. Plaintiff alleges a number of motives for the conspiracy including his race, his lack of support for McKinnie's bid for Sheriff, and his desire to terminate Wilhite from her position as secretary to the police chief.

In order to establish a claim under § 1985(3), a plaintiff must show that the conspiracy involved two or more persons. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir.1994). Additionally, under the intra-corporate conspiracy doctrine, "a corporation cannot conspire with its own agents or employees." *Cox v. Crowe*, No. 09–5–JBC, 2009 WL 1562606, at *2 (E.D.Ky. June 3, 2009). This doctrine applies to both government entities and corporations. *Brace v. Ohio State Univ.*, 866 F.Supp. 1069, 1075 (S.D.Ohio 1994). The Sixth Circuit has

recognized an exception to this general rule, holding that an "intracorporate conspiracy may be established where individual defendants are also named and those defendants act outside the scope of their employment for personal reasons." *Johnson*, 40 F.3d at 840 (quoting *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987)). Irons contends that this exception applies in this case because the alleged conspirators acted beyond the scope of their employment in plotting to terminate him. However, Plaintiff fails to present facts demonstrating that his termination was anything more than an "internal corporate [decision], which would almost always be within the scope of employment." *Johnson*, 40 F.3d at 841. The court in *Johnson* illustrated a situation involving a manufacturing corporation's employees, for racially discriminatory reasons, attempting to "prevent a person from renting an apartment owned by another company." *Id.* at 840–41. The court noted that it was this type of behavior that falls outside the scope of the intracorporate conspiracy doctrine. *Id.* at 841. However, "if the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by this statute." *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir.1972). "[M]anagers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Johnson*, 40 F.3d at 840 (quoting *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir.1990)). Because the power to fire the police chief fell within the Mayor's authority and the power to review that decision was within the duty of the Personnel Board, the alleged conduct did not fall

outside of the scope of the Defendants' employment. Irons' termination was a single act by the city of Bolivar, not a conspiracy among individual agents. Therefore, no exception to the intracorporate conspiracy doctrine applies in the instant case.

Because all of the alleged conspirators are employees or agents of the City of Bolivar and acted in pursuit of City business when they terminated the Plaintiff, the conspiracy claim fails under the intracorporate conspiracy doctrine. Therefore, Defendants' motion for summary judgment as to Plaintiff's conspiracy and 42 U.S.C. 1985(3) claims is GRANTED.

### C. 42 U.S.C. 1986

■ 42 U.S.C.1986 "makes actionable the failure to prevent 'any of the wrongs conspired to be done' under § 1985." *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir. 1984). Plaintiff argues that Dillinger knew of the conspiracy between Stevens and Wilhite, and did not prevent them from violating his civil rights. A § 1986 claim is "dependent upon the existence of a valid § 1985 cause of action." *Id.* As articulated in section B of this order, Irons failed to establish a valid § 1985(3) claim. Therefore, Dillinger cannot be held liable for failing to prevent Stevens and Wilhite from violating Iron's civil rights. Accordingly, Dillinger's motion for summary judgment as to the 42 U.S.C. § 1986 claim is GRANTED.

### D. First Amendment Retaliation Claim

Plaintiff argues that he was wrongfully removed in violation of his First Amendment rights for speaking out in a critical manner against Stevens and the city council. When analyzing a First Amendment claim involving a public employee, the Court must determine "whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006). If not, the employee does not receive First Amendment protection against "his or her employer's reaction to the speech." *Id.*

■ In his complaint, Irons asserts two grounds for First Amendment retaliation. First, he argues that he was fired over conversations with Stevens regarding the illegality of detaining people without reasonable suspicion or probable cause. He also refers to his statements communicated to the Mayor indicating that he wanted Wilhite discharged from her position as secretary to the police chief. These statements are not protected by the First Amendment, as they were made pursuant to his duty as Chief of Police. *Id.* at 421, 126 S.Ct. at 1960. *Garcetti* holds that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* Here, Irons was speaking to Stevens on matters pertaining to his work as Chief of Police and not as a private citizen. Therefore, Irons may not pursue a First Amendment retaliation claim based on these statements.

■ Alternatively, Plaintiff argues that he was discharged in violation of his First Amendment rights for "publically" criticizing the Mayor's policies. His termination letter identifies "[i]nsubordination in that you have publically criticized the Mayor and members of the City Council" as one of the grounds for his dismissal. (Stevens Aff., Ex. B.) At his Personnel Board hearing, City Council members expounded on this claim by accusing the Plaintiff of "badmouthing" and criticizing the Mayor to his employees when explaining a change in policy regarding cell phone usage and car

privileges. (Tr. of Personnel Board Hr'g 124–129, D.E. 30.) Again, Irons' statements were made in the course of his duties as Chief of Police. He was speaking in his official capacity, not as an individual citizen. Therefore, Irons has no First Amendment retaliation claims with regard to his criticisms of the Mayor and his policies. *See Haynes v. City of Circleville, Ohio,* 474 F.3d 357, 364 (6th Cir.2007) (holding that a police officer's protests to his Chief against training cutbacks were made pursuant to his official duties).

For these reasons, Defendants' motion for summary judgment as to the First Amendment retaliation claim is GRANTED.

### E. Fourteenth Amendment Due Process Claim

#### 1. Property Interest

Plaintiff contends that he was denied procedural due process when he was forced to defend against allegations not included in his termination letter before the Personnel Board. Because Plaintiff is an at-will employee, he had no expectation of continued employment and, consequently, was not entitled to due process with respect to his termination.

The Fourteenth Amendment protects against government action that deprives "any person of life, liberty, or property, without due process of law." *Bracken v. Collica,* 94 Fed.Appx. 265, 267 (6th Cir. 2004) (quoting U.S. CONST. Amend. XIV, § 1). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." *McLemore v. City of Adamsville, Tenn.,* 914 F.2d 257, at *2 (6th Cir.1990) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "[A] public employee does not have a property inter-

est in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause." *Bracken,* 94 Fed.Appx. at 267 (quoting *Chilingirian v. Boris,* 882 F.2d 200, 203 (6th Cir.1989)). In *Bracken,* the Sixth Circuit held that an at-will administrative assistant did not have a property interest in her job, even when the city charter required that the City Council ratify her termination. 94 Fed.Appx. at 268. Because there was no restriction on why she could be discharged, she had no property interest in her position. *Id.*

Here, the Bolivar city ordinance encompassing appointments and termination of police personnel states that "[a]ll members of the police department, including the chief, shall be appointed, promoted, demoted, transferred, suspended or removed by and shall serve *at the will* of the mayor." (Stevens Aff., Ex. A) (emphasis added). Neither the city charter nor any ordinance restricts the Mayor to removing the Chief of Police solely "for cause." Irons had no property interest in continued employment and thus, the fact that he did not have advance notice of other reasons for his termination or a hearing thereon did not violate his procedural due process rights.

#### 2. Liberty Interest

"[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment." *Chilingirian,* 882 F.2d at 205. "[W]hen a 'nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.'" *Quinn v. Shirey,* 293

F.3d 315, 320 (6th Cir.2002) (quoting *Chilingirian,* 882 F.2d at 205). There are five factors that Irons must establish to show that he was deprived of a liberty interest:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Quinn,* 293 F.3d at 320 (quoting *Brown v. City of Niota,* 214 F.3d 718, 722–23 (6th Cir.2000)). Here, Plaintiff fails to satisfy the second element—Defendants have alleged nothing more than improper or inadequate performance as their rationale for discharging Irons. The reasons cited for Plaintiff's termination are insubordination, failure to follow directives, and failure to complete his duties. (Stevens Aff., Ex. B.) These are not statements of "moral stigma" necessary to show "a deprivation of liberty." *Stringfield v. Graham,* 212 Fed. Appx. 530, 539–40 (6th Cir.2007) (quoting *Ludwig v. Bd. Of Trustees of Ferris State Univ.,* 123 F.3d 404, 410 (6th Cir.1997) (holding that there was no liberty interest violated when a letter charging the plaintiff with incompetence was made publicly available)). Even if Defendants had accused Irons of some immoral behavior, he was afforded a name-clearing hearing when he was permitted to refute these charges before the Personnel Board. Accordingly, Defendants did not deprive Irons of any liberty interest.

For the reasons stated, Defendants' motion for summary judgment as to the Fourteenth Amendment property and liberty due process claims is GRANTED.

### F. Equal Protection Claim

Irons, an African–American male, argues that his equal protection rights were violated when he was treated differently than similarly situated white employees. He, however, fails to allege any facts showing how these unidentified white employees are similarly comparable to him. "The Equal Protection Clause prohibits discrimination by government [that] either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. Of Richmond,* 641 F.3d 673, 681–82 (6th Cir.2011). In order to succeed on his claim, Irons must show that "(1) [he] was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position ...; and (4) ... he was treated differently than similarly situated, non-protected employees." *Harris v. Metro. Gov't of Nashville and Davidson Cnty.,* No. 3:04–0762, 2005 WL 2000636, at *7 (M.D.Tenn. Aug. 18, 2005) (citing *Noble v. Brinker Int'l, Inc.,* 391 F.3d 715, 728 (6th Cir.2004)).

Plaintiff provides no evidence in support of his assertion that he was similarly situated to the unnamed white employees. He claims that these employees "were allowed to clean out their office [sic] without the Mayor and City Administrator standing [there]." (Second Am. Compl. at ¶ 52.) In order to show that an employee is similarly situated, Irons must provide facts establishing that the employee "dealt with the same supervisor, [had] been subject to the same standards and [had] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish [his] conduct or the

employer's treatment of [him] for it." *Russell v. Univ. of Toledo,* 537 F.3d 596, 607 (6th Cir.2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998)). Rather than present facts in support of his claim, Plaintiff argues that there has not been adequate discovery on the matter and urges the Court to reserve judgment. The proper response by the Plaintiff would have been to file an affidavit or declaration with this Court showing why "[he] cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). Instead, Irons chose to respond to the motion for summary judgment without presenting any facts in support of his position. Here, Plaintiff has not demonstrated a genuine dispute as to any material fact concerning how these other white employees were similarly situated. He does not even identify who these other white employees are. Plaintiff, therefore, fails to satisfy the fourth element of his claim. Accordingly, Defendants' motion for summary judgment as to the Equal Protection claim is GRANTED.

### G. Tennessee Human Rights Act

Similar to establishing an Equal Protection claim, the Tennessee Human Rights Act ("THRA") requires that Irons prove: "(1) that he is a member of a racial minority; (2) that he was satisfactorily performing his job duties; (3) that he was subject to an adverse employment action; and (4) ... that similarly situated non-minority employees were treated more favorably." *Osagie v. Peakload Temp. Serv's.,* 91 S.W.3d 326, 329 (Tenn.Ct.App. 2002). As stated in section F, Irons has failed to show how he was similarly situated to other non-identified white employees. Accordingly, Defendants' motion for summary judgment as to the THRA claim is GRANTED.

### H. Tennessee Equal Access to Justice Act

Plaintiff requests relief under the Tennessee Equal Access to Justice Act ("TEAJA"). The TEAJA was enacted for the purpose of providing small businesses with the opportunity to obtain adequate legal representation when engaged in a dispute with a local government. *Ryan v. Metro. Gov't,* No. M2005–00761–COA–R3–CV, 2006 WL 2805146, at *2 (Tenn.Ct.App. Sept. 29, 2006). In order to recover under TEAJA, the plaintiff must be a small business as defined by Tenn.Code Ann. § 29–37–103(3)(A). *Id.* Obviously, Irons is not a small business nor does he claim to be. Accordingly, he may not recover under TEAJA and Defendants' motion for summary judgment on this claim is GRANTED.

### I. § 1983 Claim Against the City

For a plaintiff to prevail on a 42 U.S.C. § 1983 claim, he "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir.2005) (quoting *Waters v. City of Morristown,* 242 F.3d 353, 358–59 (6th Cir.2001)). "While municipalities may not be held vicariously liable under § 1983 for the actions of their employees, they 'may be held directly liable for a constitutional violation committed through a [municipal] policy or practice.'" *Stone v. Grand Junction,* 765 F.Supp.2d 1060, 1071 (W.D.Tenn.2011) (quoting *Jones v. Muskegon Cnty.,* 625 F.3d 935, 946 (6th Cir. 2010)). Here the constitutional violations complained of—violations of the Fourteenth Amendment Due Process and Equal Protection Clauses and the First Amendment retaliation claim—have been

disposed of through summary judgment.[1] It is therefore unnecessary for this Court to consider whether the City is liable under § 1983.

### J. Qualified Immunity

Government officials performing discretionary functions are afforded qualified immunity and are shielded from civil liability "insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). All of Plaintiff's federal claims have been disposed of through summary judgment in favor of the Defendants.[2] Therefore, the question of whether the individually named defendants are entitled to qualified immunity is moot.

### IV. CONCLUSION

For the reasons discussed herein, the Court finds no genuine issue of material fact as to Plaintiff's conspiracy, 42 U.S.C. § 1985(3), § 1986, First Amendment Retaliation, Due Process, Equal Protection, THRA, and TEAJA claims. Thus, summary judgment is GRANTED on behalf of the Defendants. As such, the issues of the City's § 1983 liability and the Defendants' qualified immunity are moot.

---

1. See Sections A, D, E, and F above.

2. See Sections A, B, C, D, E, and F above.