Joe ALLEN, Plaintiff,

v.

CITY OF JACKSON; West Tennessee Healthcare Foundation, Inc., d/b/a Medical Center Laboratory, d/b/a Jackson–Madison County General Hospital; and Mayor Jerry Gist, in his Individual Capacity, Defendants.

No. 1:13–cv–01079–JDB–egb.

United States District Court,
W.D. Tennessee,
Eastern Division.

Nov. 7, 2013.

Teshaun David Moore, TD Moore Law Firm, Memphis, TN, for Plaintiff.

Matthew Robert Courtner, Milton Dale Conder, Jr., Patrick Wayne Rogers, Rainey Kizer Reviere & Bell, PLC, Jackson, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

J. DANIEL BREEN, Chief Judge.

On March 4, 2013, Plaintiff, Joe Allen, brought this action against Defendants, City of Jackson ("the City"), West Tennessee Healthcare Foundation, Inc. d/b/a Medical Center Laboratory d/b/a Jackson–Madison County General Hospital ("WTHF"), and Jackson, Tennessee Mayor Jerry Gist, for damages arising when Plaintiff, a police officer employed by the City, was terminated for failing a random drug test. Allen sues under 42 U.S.C. § 1983, alleging that the City and Mayor Gist violated his procedural due process rights by depriving him of property (his job) without adhering to the City's own prescribed pre-termination procedure and by depriving him of his liberty interests by releasing to the press a defamatory statement relating to his termination without providing him a "meaningful" opportunity to clear his name. He also claims common-law breach of contract against the City and defamation against Mayor Gist for these same acts.[1] (Amend. Compl., D.E. 4.) The City and Gist have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all claims against them. (D.E. 9.) For the reasons stated herein, the Defendants' motion is GRANTED.

---

1. The complaint further includes a negligence claim against WTHF, the company that performed the urine drug screening at the behest of the City, but that contention is not a subject of this motion.

## I. FACTUAL BACKGROUND[2]

Allen began working on an at-will basis as a police officer for the City of Jackson on December 9, 2010. (Stmt. of Material Facts ¶¶ A–B, D.E. 9–2.) The City maintains a zero-tolerance policy prohibiting its employees from being under the influence of, among other drugs, THC (cannabinoids/marijuana) while working for the City. (*Id.* ¶ G.) The policy defines "under the influence" as "a state of having levels where screening test results are reported as being positive." (*Id.* ¶ K.)

On April 23, 2012, Plaintiff submitted a urine specimen for a random drug screening at the request of the City. (*Id.* ¶ H.) The drug screening yielded a positive result for cannabinoids. (*Id.* ¶ I.) The lab reported his test results to the City. (*Id.* ¶ L.) On April 27, 2012, the City fired Plaintiff on the basis of this cannabinoid-positive screening. (*Id.* ¶ A, M.) At the time of his termination, Allen was still a "probationary" employee as he had not yet worked for the City for the required twenty-four months. (*Id.* ¶ C.) On May 25, 2012, Plaintiff's urine sample was retested and again yielded a positive result for cannabinoids. (*Id.* ¶ J.)

On May 2, 2012, the Jackson Sun newspaper reported that Mayor Gist had the previous day released the following statement: "Joe C. Allen, a probationary Jackson police officer, has been terminated from employment after he tested positive for marijuana in a random drug screening." (*Id.* ¶ N.)

At some point after Allen's termination, the City offered him a public name-clearing hearing, which was scheduled for January 31, 2013. (*Id.* ¶ D.) The parties agreed to have attorney Wes Clayton serve as the hearing officer. (*Id.* ¶ E.) However, on or about January 26, 2013, Plaintiff notified the City that he had decided to "waive" the name-clearing hearing. (*Id.* ¶ F.)

In their summary judgment motion, Defendants argue that they are not liable under 42 U.S.C. § 1983 because Plaintiff did not have a Fourteenth Amendment-protected property interest in continued employment, and, although he did have a protected liberty interest in his reputation, he was not deprived of that interest without due process because the City offered him a name-clearing hearing. They also argue that Gist is entitled to qualified immunity and that the City cannot be held liable under § 1983 because Plaintiff has not established municipal liability. As to Plaintiff's state-law assertions, they contend there is no evidence the Mayor acted with actual malice as required for the defamation action and that the breach-of-contract claim fails because the zero-tolerance policy is not a contract or, if it is, the City did not breach it. Plaintiff filed a response (D.E. 17), and Defendants filed a reply (D.E. 18).

---

**2.** The Local Rules of this Court require motions for summary judgment to "be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." LR 56.1(a), Local Rules of the United States District Court for the Western District of Tennessee. The City and Gist have complied with the Local Rules by submitting such a statement of facts. (D.E. 9–2.) Any party opposing summary judgment must respond to each fact stated by the movant. LR 56.1(b). Under the Local Rules, "[f]ailure to respond to a moving party's statement of material facts ... shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). Rule 56(e) of the Federal Rules of Civil Procedure also provides that if a party "fails to properly address another party's assertion of fact ..., the court may consider the fact undisputed for purposes of the motion." Fed.R.Civ.P. 56(e)(2). Because Allen did not respond to the Defendants' statement of material facts, the Court will consider them undisputed for the purposes of deciding this motion.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedures states that, upon a motion of a party, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the motion is properly supported by proof, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party must provide the court with more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A party may not oppose a summary judgment motion by sole reliance on the pleadings, but must provide "concrete evidence supporting [his] claims." *Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir. 1989); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

"A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752, 759 (6th Cir.2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If the party who bears the burden of proof at trial fails to make a showing sufficient to establish an element necessary to her case, entry of summary judgment is appropriate. *Poss v. Morris (In re Morris),* 260 F.3d 654, 665 (6th Cir.2001) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). "[O]n summary judg-ment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. ANALYSIS

As a preliminary matter, the Court considers and rejects Plaintiff's "object[ion] to the submission of Defendants' motion [for summary judgment] because there has been no discovery performed and no record to rely on in determining whether there are issues of material fact." (*See* D.E. 17 at 1–2.) The Federal Rules of Civil Procedure allow "a party [to] file a motion for summary judgment at any time until thirty days after the close of discovery." Fed.R.Civ.P. 56(b). A party who does not have access to evidence necessary to respond to a summary judgment motion must file an affidavit under Federal Rule of Civil Procedure 56(d). *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 627 (6th Cir.2002).[3] In this case, Plaintiff did not file a Rule 56(d) affidavit. Therefore, the Court will address the merits of the Defendants' motion.

### A. Fourteenth Amendment Due Process Claims under 42 U.S.C. § 1983

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a

---

**3.** *Abercrombie & Fitch* refers to subsection (f) of Rule 56. However, the Rule was amended in 2010 and subsection (f) was moved to subsection (d). *See Siggers v. Campbell,* 652 F.3d 681, 695 n. 8 (6th Cir.2011). According to the Advisory Committee's notes, "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed.R.Civ.P. 56 advisory committee's note (2010 Amendments).

plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir.2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." *Humes v. Gilless*, 154 F.Supp.2d 1353, 1357 (W.D.Tenn.2001).

■■■ Allen contends that Mayor Gist and the City violated his right to procedural due process under the Fourteenth Amendment. The Fourteenth Amendment protects against government action that deprives " 'any person of life, liberty, or property, without due process of law.' " *Bracken v. Collica*, 94 Fed.Appx. 265, 267 (6th Cir.2004) (quoting U.S. CONST. Amend. XIV, § 1). In considering a claim for violation of procedural due process, the Court must first determine "whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir.2002) (citing *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997)). After establishing a protected interest, the plaintiff must then show "such interest was abridged without appropriate process." *Id.* (quoting *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir.1995)).

■■■ The Defendants argue that the Plaintiff cannot show that he had a property interest—for the purposes of a procedural due process claim—in his position as a City police officer because he was an employee at will and still in the probationary period of his employment. The Fourteenth Amendment does not create property interests; "rather they are created and defined by independent sources, such as state law." *Hamilton*, 281 F.3d at 529 (citing *Brotherton v. Cleveland*, 923 F.2d 477, 480 (6th Cir.1991)). "Property interests protected by the due process clause must be more than abstract desires for or attractions to a benefit. The due process clause protects only those interests to which one has a 'legitimate claim of entitlement.' " *Id.* (internal citations omitted)(citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). These interests may be derived from "a state statute, a formal contract, or a contract implied from the circumstances." *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 409 (6th Cir.1997) (citing *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir.1997); *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir.1991)).

■■■ "An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause." *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir.1994) (citing *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir.1989); *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir. 1981)). In this case, it is undisputed that Allen's employment as a City police officer was on an at-will basis. The Plaintiff argues nonetheless that he had a protectable property interest because the City of Jackson's zero-tolerance drug-free workplace policy explicitly provided a mandatory procedure for how a city employee should be terminated in the event of a failed drug test, thereby altering Plaintiff's "status and rights" with respect to a termination of that sort. (D.E. 17–1 at 9.) The Court does not agree that the zero-tolerance policy gave Plaintiff a constitutionally protected property interest. Nothing in the policy exhibits an intent on the part of the City to modify Plaintiff's at-will status

such that his "termination would be *only* for good cause," *Gregory*, 24 F.3d at 785 (emphasis added). Rather, the policy, by stating that "[c]onfirmed positive [drug] test results of a current employee will result in immediate termination of employment with the City," (D.E. 17–2 at 6), merely provided notice of a specific event that would result in termination, without restraining in any way the City's right to otherwise terminate the Plaintiff for another reason or for no reason at all. *Cf. Irons v. City of Bolivar*, 897 F.Supp.2d 665, 671 (W.D.Tenn.2012) ("Neither the city charter nor any ordinance restricts the Mayor to removing the Chief of Police solely 'for cause.' "). Because Allen was an at-will employee, he had no expectation of continued employment and, consequently, was not entitled to due process with respect to his termination.[4] *Cf. Clark v. Burns*, 105 F.3d 659, 1997 WL 9973, at *3 (6th Cir. Jan. 9, 1997) (unpublished table decision)("[Plaintiff's] unchallenged status as an at-will public employee in Tennessee left her no constitutionally protected property interest in continued employment."). Accordingly, his property-interest claim must fail.

■ The Plaintiff also alleges that he was deprived of his liberty when Mayor Gist communicated to local media outlets that the officer had been fired after testing positive for marijuana in a random drug screening. "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment." *Chilingirian*, 882 F.2d at 205. "[W]hen a 'nontenured employee

shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.' " *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.2002) (quoting *Chilingirian*, 882 F.2d at 205). There are five factors that Allen must establish to show that he was deprived of a liberty interest:

> First, the stigmatizing statements [were] made in conjunction with the plaintiff's termination from employment.... Second, [the statements were more than mere allegations of] improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges [were] made public. Fourth, ... the charges made against [the plaintiff] were false. Lastly, the public dissemination [was] voluntary.

*Quinn*, 293 F.3d at 320 (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir.2000)). Here, Allen failed to satisfy the fourth element because there was no evidence that the Mayor's statement to the media was false. The zero-tolerance policy prohibited Plaintiff from "being under the influence of drugs." (D.E. 17–2 at 3.) Per the policy, "under the influence" means "having levels where screening test results are reported as being positive." (*Id.*) It is undisputed that the lab reported Plaintiff's screening test results as positive for marijuana and that the City terminated him based on those results. Because Mayor Gist's statement in the press release was true, Plaintiff cannot establish that he was deprived of a liberty interest.[5]

---

**4.** Plaintiff's probationary status at the time of his termination further supports the Court's conclusion. *See Buckley v. City of Collierville*, 658 S.W.2d 541, 544 (Tenn.Ct.App.1983) ("it is well established that absent a statutory requirement of some type, a probationary po-

liceman has no property interest in employment and can be dismissed without a hearing and without cause").

**5.** In an attempt to prove the falseness of Mayor Gist's statement, the Plaintiff insists that

Even if Plaintiff had shown that he was deprived of a liberty interest, his claim would still fail because he was not denied due process. Once a plaintiff has established a liberty deprivation, "he is entitled to a name-clearing hearing if he requests one." *Brown*, 214 F.3d at 723 (citing *Ludwig*, 123 F.3d at 410). "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Quinn*, 293 F.3d at 320 (citing *Brown*, 214 F.3d at 723). In this case, it is undisputed that the City offered Allen a name-clearing hearing, which he waived. Plaintiff attempts to circumvent these undisputed facts by claiming that the City *effectively* denied him an opportunity to clear his name because the opportunity they offered him was a meaningless one. Specifically, Plaintiff contends that the City never complied with his request to have his urine sample tested for a third time, and therefore he lacked evidence essential to clear his name at a hearing. However, the proof presented to the Court by both parties contradicts Plaintiff's position.

As to a third test, the zero-tolerance policy provides, "If the second test confirms positive, a third test may be conducted on the same sample as withdrawn for the initial test at a laboratory selected by the City, but at the expense of the employee." (D.E. 17–2 at 5.) In a letter dated May 31, 2012, Plaintiff notified Mayor Gist of his request for a second test and, should the second test yield a positive result, a third test. (*See* D.E. 17–5.) Allen's requests for a second and third test were reviewed by the City's attorney, who responded to Plaintiff in a letter dated June 4, 2012, that, because Plaintiff's positive test result had already been "confirmed by the laboratory ... he had been afforded due process in the handling of his termination." (D.E. 17–6 at 1.) However, on September 25, 2012, the City contacted Plaintiff (through his attorney), this time informing him that on May 25, 2012, a second test of his urine sample had been conducted and had again yielded a positive result and that "the sample [would be] available for one year after it was taken should [Plaintiff] like to pay for a third test." (D.E. 18–3 at 1.) By letter dated January 29, 2013, Plaintiff's attorney asked the City to select a laboratory to conduct the third urine test or, in the alternative, to let Plaintiff know if the City was agreeable to a company called LabCorp—which Plaintiff had already contacted and which was willing to send a courier to pick up the urine sample—performing the test. (*See* D.E. 18–1.) The City responded on Feb-

the concentration of cannabinoid metabolite in his urine on the initial screening was only 16 nanograms per milliliter (ng/mL) and that this means he "should have passed his drug screening" because the "analytical cut-off concentration" required for a positive test result for cannabinoid was 50 ng/mL. (D.E. 17–1 at 5.) However, the summary (sent by the lab to the City) of Plaintiff's screening test results clearly states "POS" (positive) in the "Results" column next to the test for cannabinoids and indicates that this was "confirmed by GC/MS." (*See* D.E. 9–3 at 4.) While the summary also contains a table specifying that for a "screen," 50 ng/mL is the "analytical cut-off concentration" as to cannabinoids/marijuana, Plaintiff has cited no proof to support his allegation that this technical language means 50 ng/mL was a threshold concentration required to be present before a positive cannabinoid result could issue. The Court also notes that the listed "analytical cutoff concentration" for "confirmation" purposes was only 15 ng/mL. (*Id.*) Even were the Court to accept Plaintiff's position that the results of his screening "should have" been negative, this at most suggests error on the part of the lab, whose job it was to interpret the screening, and not the City or Mayor Gist, who simply relied on what the lab reported to be positive test results in terminating Plaintiff's employment and in stating as much to the press.

ruary 18, 2013, that although LabCorp could not perform the retesting because it was merely a courier service and not a laboratory, the Plaintiff was free to select a lab of his choosing, and once the City verified that Plaintiff's selection was a certified laboratory, it would arrange to deliver the urine to that lab "under the appropriate lab protocols." (D.E. 18–2 at 1.) This series of correspondence clearly refutes Plaintiff's undocumented assertion that the City failed to comply with his request for a third test. As such, the Court finds unavailing his argument that the name-clearing opportunity offered to him was meaningless. Because the unrefuted evidence demonstrates that the Defendants complied with the dictates of due process by affording Plaintiff "an opportunity to be heard to refute the charges disseminated against him," *Quinn*, 293 F.3d at 321, his liberty-interest claim cannot proceed.

For these reasons, the motion for summary judgment as to Plaintiff's procedural due process claims is GRANTED, and these claims are DISMISSED.

## B. Defamation Claim

 Mayor Gist contends that summary judgment is also warranted as to Allen's defamation claim because there is no proof of actual malice such as is required for a public official like Allen to recover. To establish a prima facie case of defamation under Tennessee law, the plaintiff must show: (1) that a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn.1999). If the plaintiff is a public official or public figure, he must also prove that the defam-

atory statement was "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn.Ct. App.2005) (citation and internal quotation marks omitted).

Allen, as a police officer, was a public official. *See Selby v. Ilabaca*, No. 02A01–9503–CV–00058, 1996 WL 219620, at *4 (Tenn.Ct.App. Apr. 29, 1996); *Tomlinson v. Kelley*, 969 S.W.2d 402, 405 n. 2 (Tenn. Ct.App.1997) ("Any governmental official whose duties affect the lives or peace and tranquility of citizens or their families is a public figure."). Thus, unless Mayor Gist acted with actual malice, Plaintiff's defamation claim must fail. Again, actual malice requires that the defamatory statement be made with knowledge that it was false or with reckless disregard for whether it was false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). There is no proof Mayor Gist's statement to the media was false. However, even if the Court were to accept as fact Plaintiff's unsupported assertion that the concentration of marijuana metabolite in his urine was not high enough to yield a positive result, the fact is that it did yield a positive result, at least so far as Mayor Gist knew. There is no indication Gist acted with reckless disregard about the accuracy of the positive test result. Likewise, there is no proof that he had any reason to doubt the report of the lab or that he ever entertained such a doubt. *See St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) ("reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."). Based on the

record before the Court, no reasonable jury could conclude that Gist acted with actual malice. Accordingly, the motion for summary judgment as to Plaintiff's defamation claim is GRANTED.

### C. Breach–of–Contract Claim

 The City contends that Plaintiff's breach-of-contract claim must be dismissed because the zero-tolerance drug-free workplace policy on which it relies is not a contract. Allen counters that the policy "has all the component[s] of a contract," including "mutual promises and consideration," and "contains a coversheet that looks like a contract." (D.E. 17–1 at 15–16.)

 In order for the provisions of an employee personnel policy such as the one at issue here to be enforceable in contract under Tennessee law, the language contained in the policy must evidence the employer's intent to be bound by its contents. *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn.Ct.App.1988). "Unless the employee [policy] contains specific guarantees or binding commitments, the [policy] will not constitute a contract." *Williams v. Memphis Hous. Auth.*, No. 02A019608–CV00190, 1997 WL 287645, at *2 (Tenn.Ct. App. June 2, 1997) (citing *Whittaker v. Care–More, Inc.*, 621 S.W.2d 395, 397 (Tenn.Ct.App.1981)), *holding modified in part on other grounds by Reed v. Alamo Rent–A–Car, Inc.*, 4 S.W.3d 677 (Tenn.Ct. App.1999). This is because, to be enforceable, "a contract must result from a meeting of the minds of the parties in mutual assent to [its] terms," *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn.2005) (citation and internal quotation marks omitted). *Gardner v. Univ. of Memphis Coll. of Bus.*, No. W2002–01417–COA–R3CV, 2003 WL 1872640, at *3 (Tenn.Ct.App. Apr. 8, 2003). In only a "few instances" have

Tennessee courts "concluded that the language of an employee handbook [or policy] was binding on an employer." *Williams*, 1997 WL 287645, at *2 (collecting cases).

In its zero-tolerance drug policy, the City commits itself to nothing. Instead, it proclaims various rights of the City and corresponding responsibilities of and prohibitions applicable to employees, as well as the consequences to an employee for failing to comply with these rules. These provisions conform with the policy's self-declared purpose "to promote a safe, healthy working environment for all employees; to reduce absenteeism and tardiness; improve work performance; and to avoid accidental injuries to people or damage to property." (D.E. 17–2 at 3.) The policy evidences no intent on the part of the City to bind itself to any obligations toward or guarantees to its employees; at most, it offers mere opportunities to employees wishing to challenge the results of an initial drug screening. Indeed, while every City employee was required to execute a signature page representing that he "[would] abide by the terms contained in this policy," (D.E. 4–1 at 2), the City offered no comparable assurance on its end. Absent any language binding the City to its terms, the zero-tolerance policy is but a unilateral expression of City policy and not enforceable as a contract. As such, it cannot form the basis of Plaintiff's cause of action for breach of contract. *See Mac-Dougal v. Sears, Roebuck & Co.*, 624 F.Supp. 756, 759 (E.D.Tenn.1985) (dismissing breach-of-contract claim upon finding that personnel manual was not a contract of employment because it was a "unilateral expression of company policy" that "[did] not reflect a meeting of the minds which would confer any contractual right upon the plaintiff").

 Even assuming, *arguendo*, that the City's zero-tolerance policy is enforce-

able as a contract, Plaintiff has not shown that the City breached the terms of the policy. Allen Claims that the City violated the zero-tolerance policy by (1) terminating him despite the fact that he did "not [have] a positive drug screening;" (2) failing to retest the sample before terminating him; and (3) failing to provide a third test. (Amend. Compl. ¶¶ 107, 117, D.E. 4.) Again, it is undisputed that the lab reported Plaintiff's screening-test results as being positive for marijuana. The zero-tolerance policy prohibits an employee from being "under the influence," and "where screening-test results are reported as being positive," an employee is under the influence. Thus, Plaintiff was in violation of the policy. According to the policy, "violators will be terminated." (D.E. 17–2 at 6.) The City was not in violation but, rather, *followed* the policy in terminating Plaintiff's employment. Likewise, it was not a breach of the policy for the City to terminate Plaintiff before conducting a second test. The policy does not require a positive urine sample be retested prior to termination. Rather, a second test "may" be performed if a urine sample yields a positive result on initial screening. Finally, the City did not disregard the policy by failing to provide a third test. Not only does the policy not require a third test, but there was no proof the City denied Plaintiff a third test. For these reasons, summary judgment is GRANTED on Plaintiff's claim for breach of contract against the City.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds no genuine issue of material fact as to Plaintiff's Due Process, defamation, and breach-of-contract claims. Thus, summary judgment is GRANTED to Defendants, and the claims against them are DISMISSED with prejudice. As such, the issues of the City's amenability to suit under § 1983 and Gist's qualified immunity are moot.